**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **DEVOLVER DIGITAL, INC.** | |
| **Plaintiff,** | **Civil Action No.**  1:26-cv-00248 |
| **v.** | |
| **ESC-TOY, LTD. and ERICK CHATEL** | |
| **Defendant.** | |

**COMPLAINT FOR COPYRIGHT AND TRADEMARK INFRINGEMENT
AND FALSE DESIGNATION OF ORIGIN**

## COMPLAINT FOR COPYRIGHT AND TRADEMENT INFRINGEMENT

Plaintiff Devolver Digital, Inc. ("Devolver"), for its Complaint for Copyright and Trademark Infringement and False Designation of Origin against Defendant ESC-Toy., Ltd ("ESC Toy") and Defendant Erick Chatel, pseudonym Erick Scarecrow, ("Mr. Scarecrow"), alleges as follows:

## NATURE OF THE CASE

1. This is an action for willful copyright and trademark infringement and false designation of origin arising from Defendants' unauthorized and extensive exploitation of Devolver's valuable intellectual property rights in its brand and in the popular and groundbreaking Hotline Miami video game franchise. Following termination of a one-off, limited merchandising agreement over six years ago, Defendants not only continue to sell merchandise that infringes copyrights in Hotline Miami but also promote and market the infringing products as being made and sold in "collaboration with" Devolver, with the goal of deceiving consumers into believing such an affiliation exists when it does not.

2. Devolver values originality, creativity, and hard work. These core values are consistently reflected in the games it chooses to publish in partnership with developers who possess unique visions of how varied and expressive games can be as an artistic medium. Devolver thus has no choice but to act when these core values are threatened by a former business partner intentionally and unlawfully exploiting its intellectual property, goodwill, and brand, as Defendants are doing.

3. Devolver is the exclusive licensee of copyrights and trademarks in the Hotline Miami video game franchise (the "Hotline Miami IP") and the owner of distinctive, protectable trademarks in its own trade name, DEVOLVER DIGITAL (together with the Hotline Miami IP, the "Devolver IP")—all of which Defendants have infringed and are continuing to infringe willfully to Devolver's severe detriment.

4.      Ten years ago in 2015, Devolver entered into a merchandising fulfillment agreement with ESC-Toy—a small merchandiser founded and operated by Mr. Scarecrow. Defendant negotiated the fulfillment agreement with Devolver's founders, who were and still are located in Austin, Texas.

5.      This single, now-terminated contract granted ESC-Toy *only* the right to create and sell merchandise using the Hotline Miami IP within the limited confines of that agreement, including figures, pins, prints, and apparel (the Authorized Merchandise).  The contract conveyed no intellectual property rights to ESC-Toy.  Devolver terminated that agreement in June 2019, and ESC accepted the termination in writing.  ESC retained the right only to sell off any remaining inventory of Authorized Merchandise—nothing more.

6.      Despite termination of the fulfillment agreement, Defendants have continued to willfully reproduce, display, and distribute unauthorized derivative works of the Hotline Miami games and to use the HOTLINE MIAMI and DEVOLVER DIGITAL trademarks in commerce without authorization.  Defendants have also made additional inventory of the Authorized Merchandise in violation of Devolver's rights in the Hotline Miami IP.  They have designed, manufactured, and sold additional unauthorized Hotline Miami products.  And they promote and sell these products under the HOTLINE MIAMI and DEVOLVER DIGITAL marks, aiming to deceive customers that the products are made and sold "in collaboration" with Devolver under these distinctive brands.

7.      Worse still, Defendants are infringing Devolver's intellectual property rights intentionally.  Despite Devolver's demand that they cease and desist, both ESC-Toy and Mr. Scarecrow continue to market and sell infringing products under the HOTLINE MIAMI and DEVOLVER DIGITAL brands, falsely suggesting they are "official collaborator[s]" with Devolver.  Unbeknownst to Devolver (or Dennaton, the developer of the Hotline Miami games and exclusive licensor to Devolver), and after termination of the fulfillment agreement, Mr. Scarecrow also registered copyrights in unauthorized derivative works of the Hotline Miami games, fraudulently representing to the Copyright Office that he has rights in IP that belongs to

Dennaton and is exclusively licensed by Devolver. The applications contain no acknowledgment or disclaimer of the preexisting Hotline Miami IP.

8.     Defendants' egregious infringement does not stop there. Most recently, Defendants have exploited and continue to exploit the DEVOLVER DIGITAL and HOTLINE MIAMI brands to tout a forthcoming Hotline Miami "spinoff" game. Defendants have even advertised a coming Kickstarter to raise funding for this so-called "spinoff," again using the HOTLINE MIAMI and DEVOLVER DIGITAL marks and making misleading statements that they are working with Devolver and Dennaton on the project. This is patently false. Defendants' Kickstarter for the purported spinoff game is a scam aimed at confusing fans of Hotline Miami and Devolver into funding what can only be an unauthorized derivative work of the Hotline Miami IP, made in willful violation of Devolver's rights.

9.     Defendants' widespread and blatant infringement of the Devolver IP has caused and continues to cause irreparable harm to the Devolver IP, brand, and goodwill. Their infringement and scamming must end.

### THE PARTIES

10.     Devolver Digital, Inc. is a Delaware corporation. While Devolver has a business address in Wilmington, Delaware, its co-founders—the Chief Executive Officer and Chief Marketing Officer of the company—are located in Austin, Texas, and were in Austin when they discussed, and the parties entered into, the fulfillment agreement with Defendants.

11.     ESC-Toy Ltd. is a New York company with its principal place of business in Nevada. ESC-Toy is a merchandising company that makes and distributes various products, including figures, pins, plushies, and apparel, including products that infringe Devolver's intellectual property rights, via at least www.esctoy.com.

12.     Erick Chatel, pseudonym Erick Scarecrow, is an individual residing in Nevada. Mr. Scarecrow founded ESC-Toy in 2005 and "is involved in every aspect of the company,"[1] including

---

[1] See https://esctoy.com/about.

manufacture, distribution, and marketing of Defendants' infringing products and registration of copyrights in the Hotline Miami IP without authorization or basis.

## JURISDICTION AND VENUE

13. This is a civil action seeking damages, injunctive relief, and other equitable relief under the Copyright Act, 17 U.S.C. §§ 101, 501–505 *et seq.* and the Lanham Act, 15 U.S.C. §§ 1114, 1116-1117, and 1125(a).

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121.

15. This Court has personal jurisdiction over Defendants because Defendants have purposefully directed their infringing activities into Texas, have purposefully availed themselves of the benefits of doing business in Texas, and have thus established sufficient continuous minimum contacts with the forum.

16. Defendants have purposefully directed and expressly aimed their infringing activity at Texas by unlawfully exploiting and infringing the intellectual property rights and brand of Devolver, a company that has long operated in significant part from and in Texas, including through its founders, the CEO and CMO of the company.

17. Defendants' interactive online stores, hosted on at least www.esctoy.com as well as https://www.etsy.com/shop/erickscarecrowshop and https://popshop.live/erickscarecrow market to, accept orders of infringing products from, offers to ship and in fact ships to customers in Texas, including Texas addresses located in this district. Defendants have therefore delivered their infringing products into the stream of commerce with the expectation and knowledge that they would be purchased by or used by consumers in Texas, including in this district.

18. Upon information and belief, Defendants have also expressly aimed their infringing conduct at this forum by conducting and transacting significant business with consumers located in Texas and in this judicial district for the sale and shipment of Defendants' infringing products. ESC-Toy operates the ESC toy website, which is accessible in Texas by Texas customers, and

Devolver believes and therefore alleges that ESC-Toy thus offers and conducts sales of infringing products into Texas, including this district. Mr. Scarecrow directs the shipment of orders placed through the ESC-Toy website, and his name appears on the product pages for various infringing products and the mail packaging of shipments sent to customers, including those residing in Texas. As the founder of ESC-Toy, Mr. Scarecrow not only operates and maintains the ESC-Toy website but also manages additional online storefronts on Etsy and Popshop that sell ESC-Toy products, including infringing products. These storefronts, which operate under Mr. Scarecrow's name, are likewise accessible to customers in Texas. Devolver believes and therefore alleges that Defendants' sales of infringing products into Texas are part of their regular course of business and are not random, isolated, or fortuitous, and that Defendants exercise direct control over the distribution of such infringing products into Texas, including by shipping directly to Texas addresses in this judicial district.

19.    Defendants have also engaged in extensive infringing conduct to market their infringing products and projects through social media in communications accessible and viewable by, and targeted at, consumers in Texas, including marketing their infringement under the DEVOLVER and HOTLINE MIAMI marks to create a false perception that their conduct is endorsed, approved, sponsored, or otherwise affiliated with Devolver, causing harm to Devolver's intellectual property rights and brand in Texas. Mr. Scarecrow likewise routinely advertises ESC-Toy's goods, including Defendants' infringing goods, on his personal social media accounts, including his Instagram, Twitter/X, and Facebook accounts, and ESC-Toy frequently reposts his content, including posts infringing Devolver's DEVOLVER DIGITAL and HOTLINE MIAMI marks. Devolver believes and therefore alleges that Defendants have a number of social media followers in Texas that they thus target with their infringing conduct.

20.    Accordingly, Defendants regularly conduct, transact and/or solicit business in Texas and in this judicial district, and/or derive substantial revenues from business transactions in Texas and/or in this judicial district and/or otherwise avail themselves of the privileges and

protections of the laws of the State of Texas such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

21.    Devolver has felt the brunt of the harm from Defendants' infringement in Texas, such that Texas is the focal point of the resulting harm to it.  Given that Devolver's principals and other employees operate the business from within this forum, Devolver receives substantial revenues in Texas.  Devolver also pays substantial Texas state income taxes on those revenues. Devolver has thus suffered, is suffering, and continues to suffer significant harm from Defendants' infringing activities in Texas.  And it was foreseeable to Defendants that Texas would be the focal point of the harm to Devolver from their infringement, since Defendants negotiated and entered the fulfillment agreement with Devolver knowing its principals were in Texas.  And Defendants have further caused harm felt by Devolver in Texas by selling infringing products to Texas customers and intentionally creating confusion among Texas customers as to affiliation with Devolver, harming Devolver's brand in this judicial district, such that Defendants should reasonably expect such actions to have consequences here.

22.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a), because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or in which Devolver's injury was suffered.

<u>**DEVOLVER DIGITAL'S GROUNDBREAKING GAMES**</u>
<u>**AND RELATED IP RIGHTS**</u>

23.    Founded in 2009 by longtime game developers, Devolver is a boutique video game label that specializes in publishing indie games.  Devolver "works with independent developers from all over the world to produce and promote some of the most original, eccentric, and beloved games of the past decade."[2]

---

[2] https://devolverdigital.com/about

## HOTLINE MIAMI FRANCHISE

24.    One of the most successful and beloved games Devolver has published is Hotline Miami, a high-octane, top-down shooter game developed by Dennaton Games and published by Devolver.

25.    Set in an alternative 1989 Miami, the player assumes the role of a mysterious antihero (called "Jacket" by fans of the game) on a violent rampage against members of the city's local organized crime syndicate.  As gameplay progresses, the antihero slowly loses his grip on what is real, increasingly causing the game's player to question and reflect on their in-game actions.

26.    Devolver published Hotline Miami in 2012 to tremendous critical and popular acclaim.  Hotline Miami received broadly positive reviews from critics, including an aggregate score of 85% on Metacritic, an 8.5/10 from GameSpot, an 8.8/10 from IGN, and an 8.5/10 from Polygon.  It sold over 130,000 units within the first seven weeks of release, became the bestselling game of June 2013 on the PlayStation Vita, and by May 2015 had sold over 1.5 million units across all platforms.  Hotline Miami is the winner of numerous game awards in 2012, including the "Most Fantastic" award at the Fantastic Arcade festival, "The Best Music of the Year 2012" award by PC Gamer, and "Most Original Game" award at Machinima's Inside Gaming Awards.  It has also been nominated for several other awards and has been consistently ranked as one of the best games of 2012 by numerous outlets.

27.    In 2015, Devolver published the sequel, Hotline Miami 2: Wrong Number.  Billed as "the brutal conclusion to the Hotline Miami saga," Hotline Miami 2 was much anticipated by audiences and received similarly positive reviews as its predecessor.  Hotline Miami 2 received an aggregate score of 74% on Metacritic, a 9/10 from GameSpot, an 8.8/10 from IGN, and an 8.5/10 from Polygon.

## DEVOLVER'S INTELLECTUAL PROPERTY RIGHTS

28.    Devolver is the exclusive licensee of all IP rights in the Hotline Miami games, including copyrights and trademarks.

29.     Devolver is the named claimant on copyrights relating to the Hotline Miami IP registered with the United States Copyright Office, including: 1) U.S. Copyright No. PA0002555905 ("Hotline Miami"), issued December 5, 2025; and 2) U.S. Copyright No. PA0002555908 ("Hotline Miami 2: Wrong Number"), issued December 5, 2025.

30.     Devolver is also the exclusive licensee in the HOTLINE MIAMI mark in connection with the Hotline Miami games.  Devolver (and Dennaton) first used the HOTLINE MIAMI mark in commerce in 2012.  Through continuous and exclusive use of the mark in commerce, Devolver (together with Dennaton) has established significant common-law trademark rights in the HOTLINE MIAMI mark.  This recognition has been cultivated through consistent branding, advertising, and the provision of high-quality products/services under the HOTLINE MIAMI MARKS, resulting in acquisition of secondary meaning that consumers associate the HOTLINE MIAMI marks with the source of the games, Devolver (and Dennaton), substantial goodwill and consumer reliance. Accordingly, the HOTLINE MIAMI mark serves as a source identifier and enjoys protection under the Lanham Act and applicable common-law principles.

31.     Devolver has also invested substantial resources in growing the DEVOLVER DIGITAL trade name and family of marks (the DEVOLVER DIGITAL brand).  Devolver is the record owner of: 1) U.S. Registration No. 4892741 for the mark DEVOLVER DIGITAL, application filed under serial no. 86670426 on June 22, 2015, issued on January 26, 2016, for goods and services in Class 009 in connection with computer game programs, electronic game software, and interactive video game programs; 2) U.S. Registration No. 5435833 for the mark DEVOLVER DIGITAL, application filed under serial no. 86923620 on February 29, 2016, issued on April 03, 2018, for goods and services in Class 009 in connection with computer game programs, electronic game software, and interactive video game programs; and 3) U.S. Registration No. 5127112 for the mark DEVOLVER DIGITAL, application filed under serial no. 86900001 on February 07, 2016, issued on January 24, 2017, for goods and services in Class 035 for online retail store services in the fields of motion pictures, audiovisual recordings, and video games.

## THE PARTIES' LIMITED AND LONG-TERMINATED 2015 MERCHANDISING AGREEMENT

32.     Founded in 2005, ESC-Toy is a merchandising company that makes and distributes various products, including figures, pins, plushies, and apparel.  ESC-Toy provides direct-to-consumer and direct-to-business shipping from warehouses it owns and operates, and maintains an online storefront (https://esctoy.com/) whereby customers can place orders.  On information and belief, Mr. Scarecrow is personally involved in all aspects of the business of ESC-Toy and also personally sells ESC-Toy products in storefronts other than the company's website, like Etsy and Popshop Live.[3]

33.     In 2015—three years after the release of Hotline Miami and around the time of the release of the sequel—Devolver decided to pursue merchandising for the franchise.  For this small project, Devolver enlisted Defendants.

34.     On April 30, 2015, Devolver and ESC-Toy entered into a Fulfillment Agreement (the "Agreement"), attached to this Complaint as **Exhibit A.**

35.     The Agreement granted ESC-Toy a limited, non-exclusive license to develop, produce, and sell products using the intellectual property related to several Devolver-published games, including the Devolver IP.  Under the Agreement, ESC-Toy sought, and Devolver provided assurances that Devolver owned or had licensed from the legal rightsholders the necessary intellectual property rights regarding the Devolver IP. Agreement ¶¶ 2-3. Devolver maintains these rights to the Devolver IP, including those associated with the Hotline Miami games.

36.     The Agreement granted ESC-Toy a limited license to "use, host, and render available [Devolver's] Products, Collaboration Products, [Devolver's] name, digital images from [Devolver's] product, and other materials in conjunction with [Devolver's] products." Agreement ¶ 4. All so-called "Collaboration Products" were designed and created by Mr. Scarecrow and produced pursuant to this limited license, and as such were limited-use derivative works of the Devolver IP.

---

[3] *See* https://www.etsy.com/shop/erickscarecrowshop and https://popshop.live/erickscarecrow

37.    The Agreement conveyed no intellectual property rights to ESC-Toy, let alone in the Devolver IP.  The Agreement did not include nor was it ever modified to convey any rights to ESC-Toy of the Devolver IP, any copyright ownership or assignments to ESC-Toy of the Devolver IP, or any right to seek copyright registrations for any Authorized Merchandise based on the Devolver IP. Further, the Agreement clearly states that the "limited license" granted therein "is used solely to help [Devolver] market and sell [Devolver's] Products, including Collaboration Products, and will be terminated when [Devolver] cancel[s] [its] use of the Services as set forth above." Agreement ¶ 4.

38.    No other contract, agreement, or business arrangement relating to Devolver IP exists or has ever existed between Devolver and ESC-Toy.  Nor have the parties engaged in any collaboration or had any other form of working relationship outside the Agreement.

39.    The Agreement was terminated in 2019. Devolver notified ESC-Toy of its intent to terminate, with an effective date of June 2, 2019, in a letter dated May 3, 2019. ESC-Toy acknowledged and accepted this termination in a letter dated May 31, 2019. That termination, per the Agreement's terms, ended ESC-Toy's limited license to use the Devolver IP.  ESC-Toy retained only the right to sell the remainder of any Authorized Merchandise held in inventory at the time of termination.  All Authorized Merchandise was specifically itemized and detailed in a document included with ESC-Toy's acknowledgment of the termination.  This limited sell-off right did not grant ESC-Toy the right to produce more inventory of the Authorized Merchandise and certainly did not give ESC-Toy the right to develop new products using Devolver IP or hold itself or Mr. Scarecrow out as an "Official Hotline Miami Collaborator."

## DEFENDANTS' UNLAWFUL EXPLOITATION OF HOTLINE MIAMI AND THE DEVOLVER IP

40.    Following termination of the Agreement, Defendants have engaged in extensive willful infringement of the Devolver IP.

- 10 -

41.     Completely unbeknownst to Devolver, Mr. Scarecrow quietly sought and obtained registrations from the U.S. Copyright Office for multiple works derived from Devolver's intellectual property, including no less than fifteen registrations relating to the Hotline Miami IP. These registrations make no mention of the preexisting Hotline Miami IP, let alone disclaim and limit coverage in view of it.  Defendants have thus falsely suggested that ESC-Toy has some ownership in the underlying Hotline Miami IP, constituting fraud on the Copyright Office. Defendants never said a word to Devolver about fraudulently obtaining these registrations.

42.     Defendants have also continued to design, produce, manufacture, advertise, and sell unlicensed derivative works based on Devolver IP.

43.     Defendants promote and advertise these unauthorized products on ESC-Toy's and Mr. Scarecrow's Twitter/X accounts (@ESCtoy and @erickscarecrow, respectively) using the HOTLINE MIAMI and DEVOLVER DIGITAL marks to dupe consumers into believing in an affiliation with Devolver.  These products also appear for sale on ESC-Toy's website, located at https://esctoy.com/, where they are again sold under the HOTLINE MIAMI and DEVOLVER DIGITAL marks. Defendants' social media advertisements—describing the products as "new," "official," "now available for pre-orders," "back in stock," "restocks are coming," etc.—establish that none of the advertised products or projects are Collaboration Products subject to ESC-Toy's limited sell-off rights.

44.     Examples of Defendants' social media campaign promoting the infringing products under the HOTLINE MIAMI and/DEVOLVER DIGITAL marks are below.

45.     As an example, in an X post dated July 11, 2023, ESC-Toy claimed that Hotline Miami pins by @devolverdigital and @erickscarecow were "back in stock."[4]

---

[4] https://x.com/ESCtoy/status/1678885278281265152



46. In another X post, dated September 11, 2023, ESC-Toy announced that "new" Hotline Miami goods by @erickscarecrow were up on its website.[5]



47. In a later X post, dated November 6, 2023, ESC-Toy announced that it would restock its Hotline Miami pin inventory.[6]

---

[5] https://x.com/ESCtoy/status/1705322348428054978
[6] https://x.com/ESCtoy/status/1721600165721649507



48.    In a subsequent X post, dated November 16, 2023, ESC-Toy previewed that accessories to a figurine of a Hotline Miami character would be available the following week.[7]



---

[7] https://x.com/ESCtoy/status/172536146241419098

49.    In an X post by Mr. Scarecrow dated December 14, 2023, that ESC-Toy reposted, Mr. Scarecrow claimed that new Hotline Miami prints were coming "based on the collaboration items by [himself] x Devolver."[8]



50.    In an X post dated March 24, 2024, ESC-Toy reported that more Hotline Miami figurines "by @erickscarecrow x @devolverdigital" were back in stock.[9]



---

[8] https://x.com/erickscarecrow/status/1735393812728733980
[9] https://x.com/ESCtoy/status/1771995550461878767

51.    In another X post, dated May 3, 2024, ESC-Toy announced that it had begun shipping preorders of Hotline Miami figurines.[10]



52.    Expanding its inventory, in an X post dated June 2, 2024, ESC-Toy advertised the release of t-shirts with a Hotline Miami character.[11]



---

[10] https://x.com/ESCtoy/status/1786607219603304466
[11] https://x.com/ESCtoy/status/1797377186518757749

53.     That same month, in an X post dated June 3, 2024, ESC-Toy reported that an add-on to a Hotline Miami figurine was "back in stock."[12]



54.     Shortly after, in an X post dated June 28, 2024, ESC-Toy announced the release of Hotline Miami pillows "[f]or anyone that would like to hug a vigilante tonight." [13]



---

[12] https://x.com/ESCtoy/status/1797703409581088801
[13] https://x.com/ESCtoy/status/1806788337220370820

55.     The following month, in an X post dated July 3, 2024, ESC-Toy announced the release of a Hotline Miami figurine in a new color scheme.[14]



56.     In a later X post, dated July 31, 2024, ESC-Toy advertised the release of new Hotline Miami t-shirts, promoting these t-shirts as a product of the "official collaboration" between Hotline Miami and Mr. Scarecrow.[15]



---

[14] https://x.com/ESCtoy/status/1808585728747540869
[15] https://x.com/ESCtoy/status/1818756308553633864

57.     Mr. Scarecrow also created a screenplay for an episodic series (*see* U.S. Copyright Reg. No. TX0008890490, "Hotline Miami Episodic Series first draft by Erick Scarecrow") and video game spinoff projects based on Hotline Miami, called "Samuraij" and/or "Dusted."

58.     Defendants have extensively marketed this so-called "spinoff" on social media, advertising a forthcoming Kickstarter fundraiser for the project.  Promoted under the HOTLINE MIAMI mark, Defendants' spinoff and Kickstarter are a clear scam to make consumers mistakenly believe that Defendants' HOTLINE MIAMI-branded "spinoff" is in collaboration or otherwise affiliated with, or sponsored, endorsed or approved by, Devolver, all to fund Defendants' rampant infringement.  Examples of these promotional posts are below.  Defendants' posts also usually link to the ESC-Toy website or eBay, where Defendants sell the infringing merchandise.

59.     For example, in an X post dated July 8, 2025, Mr. Scarecrow promoted Dusted by thanking his team as well as "former @devolverdigital folks" who had stopped by an ESC booth earlier in the year, provided a link to ESC-Toy's website, and used the hashtags "hotlinemiami" and "spinoffs," implying that Dusted was an official spinoff. [16]



---

[16] https://x.com/erickscarecrow/status/194271066551447583 2

60.    As another example of Mr. Scarecrow's promotional efforts, in an X post dated July 16, 2025, Mr. Scarecrow claimed that Dusted "game dev assets" were in progress, announced a forthcoming Kickstarter campaign, and provided a link to ESC-Toy's website for "more goods."[17]



61.    Shortly after, in an X post dated July 17, 2025, Mr. Scarecrow announced that more developments regarding Dusted would be shared in the weeks to come on Discord, an instant messaging platform, and again provided a link to ESC-Toy's website.[18]

---

[17] https://x.com/erickscarecrow/status/1945508032395522301
[18] https://x.com/erickscarecrow/status/1945915689102971078



62.     In a subsequent X post dated August 1, 2025, Mr. Scarecrow repeated his prior message, announcing that a Kickstarter campaign for Dusted was forthcoming and providing a link to ESC-Toy's website.[19]



---

[19] https://x.com/erickscarecrow/status/195134690307375495

63.     In another X post, dated August 5, 2025, Mr. Scarecrow posted art from his "upcoming @HotlineMiami x @erickscarecorw" spinoff and provided a link to the ESC-Toy website.[20]



64.     As an example of ESC-Toy's promotional efforts, in an X post dated April 25, 2025, ESC-Toy showcased a Dusted figurine, which, according to ESC-Toy, was "based on the upcoming #hotlinemiami spinoff," and provided a link to its online storefront for "more goods."[21]

---

[20] https://x.com/erickscarecrow/status/1820543427538243866
[21] https://x.com/ESCtoy/status/1915848644718366943

- 21 -



65.    In an X post dated August 5, 2025, ESC-Toy advertised a "test run" of its video game spin-off project "Dusted," inviting users to join a discussion channel on Discord.[22]



---

[22] https://x.com/ESCtoy/status/1952971057851449532

66.    In a subsequent X post dated August 22, 2025, ESC-Toy previewed the soundtrack for Dusted by providing a link to YouTube and its website. [23]



67.    In a later post, dated September 16, 2025, Mr. Scarecrow advertised and linked to a new "#hotlinemiami HOG OF WAR" figure for sale on eBay, using the hashtags "#erickscarecrow #hlm #spinoff #dusted."[24]

---

[23] https://x.com/ESCtoy/status/1958970043540414484
[24] https://x.com/erickscarecrow/status/1968157858249531878

- 23 -



68.    Shortly afterwards, on September 19, 2025, Mr. Scarecrow again advertised a "new #HOTLINEMIAMI Biker Pink Slip of Violence print" as "now available" and for sale on eBay, linked to the eBay page, and again using hashtags "#HLM #erickscarecrow #DUSTED."[25]



---

[25] https://x.com/erickscarecrow/status/1969247218872783145

69.     Then, on October 10, 2025, ESC posted "New #hotlinemiami" merchandise in connection with the "Dusted" project as "now available" and linked to the ESC website while promising more was "#comingsoon."[26]



70.     On October 19, 2025, Mr. Scarecrow advertised a "HOG OF WAR" print for sale on eBay, again with a link to eBay, and again with the hashtags "#hlm #spinoff #dusted."[27]



---

[26] https://x.com/ESCtoy/status/1976738560117010734
[27] https://x.com/erickscarecrow/status/1980157001759166619

71.    Then, on December 13, 2025, Mr. Scarecrow added a "Progress" post to is X account for his "Dusted" project, again featuring the "#HOTLINEMIAMI" and "#spinoff" hashtags, and linking to his online store.[28]



72.    And on January 23, 2026, Mr. Scarecrow again posted an image suggesting a "DUSTED-demo" may soon be available, again linking to his online store and using the "#HOTLINEMIAMI" and "#HLM" hashtags.[29]



---

[28] https://x.com/erickscarecrow/status/1999939649020768716
[29] https://x.com/erickscarecrow/status/2014796146305323084

73.    Additionally, as of the date of this filing, Mr. Scarecrow prominently advertises his "Dusted" project in the banner image of his personal X account and touts himself as an "Official Hotline  Miami Collaborator."[30]



74.    Defendants have used the HOTLINE MIAMI and DEVOLVER DIGITAL trademarks without license in connection with the sale of their willfully infringing products on ESC-Toy's and Mr. Scarecrow's social media accounts and website. For example, in many Twitter/X social media posts by either ESC-Toy or Mr. Scarecrow, the infringing products are described as "@hotlinemiami" or "@hotlinemiami x @erickscarecrow" collaborations, and virtually every *Hotline Miami* product listed on ESC-Toy's website includes both "Hotline Miami" and "Devolver Digital" in their descriptions.

75.    For example, in the following X post dated December 30, 2024, Mr. Scarecrow describes the Hotline Miami figurine shown as being part of "@hotlinemiami x @erickscarecrow.[31]"

---

[30] https://x.com/erickscarecrow
[31] https://x.com/erickscarecrow/status/1873960465958859071



76.     As another example, in an X post later that month, Mr. Scarecrow posted a picture of a figurine that he described as "some of the rarest @HotelineMiami #collaboration goods" he had designed.[32]



32  https://x.com/erickscarecrow/status/186762585883866649

77.     In some instances, Defendants have gone so far as to expressly state that they are promoting their infringing goods "[o]n behalf of @HotlineMiami x @ericscarecrow x @devolverdigital," falsely suggesting a direct relationship and affiliation with Devolver through exploitation of the HOTLINE MIAMI and DEVOLVER DIGITAL marks, as seen in the following X post by Mr. Scarecrow dated June 25, 2024.



## DEFENDANTS' WILLFUL INFRINGEMENT HAS PERSISTED AFTER DEVOLVER DEMANDED IT STOP

78.     After terminating the Agreement in 2019, Devolver focused its attention on its active business ventures, not anticipating that Defendants would proceed to engage in rampant infringement of the Devolver IP.

79.     In July 2024, Devolver received a letter from counsel for Defendants claiming that ESC-Toy was "actively pursuing opportunities to assist in development of" products involving the Devolver IP.  The letter referred to an email that Mr. Scarecrow had apparently sent Devolver a year prior expressing the same intent, which Devolver had never responded to or approved.

80.     After receiving the July 2024 letter, on August 8, 2024, Devolver sent a cease and desist letter to Defendants laying out their extensive willful infringement.

81.     Defendants responded on September 7, 2024, but their response letter failed to address the legal issues Devolver had raised and ignored Devolver's demands.

82.     On September 26, 2024, Devolver's counsel made clear that before any productive discussion could occur between the parties, Defendants must cancel the improperly obtained copyright registrations they procured relating to the Hotline Miami IP.   Defendants never responded.

83.     Instead, after briefly going silent upon receipt of Devolver's demand letter, Defendants then resumed their infringing conduct, ramping up their social media posts regarding their so-called infringing "spinoff" game and forthcoming Kickstarter, seen above, with more examples below.

84.     Following Devolver's demand letter, for example, in January 2025, Mr. Scarecrow posted on X that he had "a little something coming out to set the stage," and posted a picture of the unauthorized Dusted project, describing it as a "spinoff" of Hotline Miami. [33]



---

[33] https://x.com/erickscarecrow/status/188289251911527289

85.    Subsequently, in March 2025, Mr. Scarecrow announced that a "DUSTED DISCORD OPENING" was happening "SOON."[34]



## DEFENDANTS' CONDUCT HAS CAUSED, AND IS CONTINUING TO CAUSE, EXTENSIVE HARM TO DEVOLVER AND THE DEVOLVER IP

86.    Defendants' conduct has achieved precisely the result they intended: consumers are confused and believe that Defendants' infringement is an official collaboration with Devolver, when that could not be less true.

87.    For example, on June 2, 2024, Mr. Scarecrow posted an Instagram post advertising Dusted as a Hotline Miami "spinoff project." In the comments, a user asked whether Dusted was "official," to which Mr. Scarecrow replied "yes." This exchange shows actual consumer confusion, fueled and encouraged by Defendants.

---

[34] https://x.com/erickscarecrow/status/189882096713104063

- 31 -

- 32 -





88.     Defendants' conduct has caused and continues to cause substantial and irreparable harm to Devolver. By exploiting the Devolver IP without authorization, Defendants have diminished the value and exclusivity of the Devolver IP, undermining Devolver's ability to control the quality and reputation of, and goodwill in, its works and branded products.  Defendants' unauthorized sales and use of the HOTLINE MIAMI and DEVOLVER DIGITAL marks have misled consumers into believing that Defendants' products are sponsored by, affiliated with, or approved by Devolver, eroding consumer trust and goodwill that Devolver has painstakingly developed over years of investment and promotion. This confusion harms the integrity of the HOTLINE MIAMI and DEVOLVER DIGITAL brand and damages their reputation in the marketplace, threatening long term irreparable harm to Devolver's intellectual property rights and its competitive business position.

## FIRST CAUSE OF ACTION

### Trademark Infringement Under 15 U.S.C. § 1114

89.     Devolver realleges and incorporates each and every allegation of the foregoing paragraphs as though fully set forth herein.

- 33 -

90.     Devolver is the owner of the following valid federal trademark registrations for the DEVOLVER DIGITAL marks: U.S. Registration No. 4892741 for the mark DEVOLVER DIGITAL, application filed under serial no. 86670426 on June 22, 2015, issued on January 26, 2016, for goods and services in Class 009 in connection with computer game programs, electronic game software, and interactive video game programs, with a stated first use in commerce of June 8, 2009; 2) U.S. Registration No. 5435833 for the mark DEVOLVER DIGITAL, application filed under serial no. 86923620 on February 29, 2016, issued on April 03, 2018, for goods and services in Class 009 in connection with computer game programs, electronic game software, and interactive video game programs, with a stated first use in commerce of June 8, 2009; and 3) U.S. Registration No. 5127112 for the mark DEVOLVER DIGITAL, application filed under serial no. 86900001 on February 07, 2016, issued on January 24, 2017, for goods and services in Class 035 for online retail store services in the fields of motion pictures, audiovisual recordings, and video games, with a stated first use in commerce of June 8, 2009.

91.     Devolver has continuously used the DEVOLVER DIGITAL marks in commerce in the United States in connection with the above-described goods and services since at least June 2009, and the DEVOLVER DIGITAL marks have become widely recognized by consumers as identifying Devolver and Devolver's products and services.

92.     Devolver's DEVOLVER DIGITAL marks are distinctive and protectable. Devolver's registrations constitute prima facie evidence of the validity of the DEVOLVER DIGITAL marks, Devolver's ownership of the marks, and Devolver's exclusive right to use the marks in connection with the registered goods and services.

93.     Without Devolver's authorization, Defendants have used and continue to use the DEVOLVER DIGITAL marks in commerce in connection with the advertising, marketing, offering for sale, and sale of their own infringing goods and services, including through their above-described websites and social media.

94.     By using the registered DEVOLVER DIGITAL trademarks without license or authorization, Defendants' actions are likely to cause confusion, mistake, or deception as to the

- 34 -

source, origin, sponsorship, or authenticity of the goods and services offered through ESC-Toy's website, as well as other online storefronts and on social media, wherein Defendants promote and sell unlicensed products branded with the DEVOLVER DIGITAL marks.

95.    Defendants knew of Devolver's rights, and their infringement has been knowing, willful, and deliberate.

96.    Defendants' activities have damaged, and threaten to continue damaging, Devolver's reputation and goodwill.

97.    Devolver has been, and continues to be, damaged by such acts in a manner that cannot be fully measured or compensated in economic terms and therefore has no adequate remedy at law, constituting irreparable harm and entitling Devolver to permanent injunctive relief under 15 U.S.C. § 1116.

98.    Devolver is entitled to the relief provided by 15 U.S.C. § 1117(a), including, but not limited to, Defendants' profits, Devolver's damages, and costs of this action.  Because Defendants' conduct is willful and egregious, this is an exceptional case and Devolver is also entitled to recover its reasonable attorneys' fees under 15 U.S.C. § 1117(a).

## SECOND CAUSE OF ACTION

**False Designation of Origin / Unfair Competition Under 15 U.S.C. § 1125(a)**

99.    Devolver realleges and incorporates each and every allegation of the foregoing paragraphs as though fully set forth herein.

100.    Devolver is the exclusive licensee of the Hotline Miami IP, including the HOTLINE MIAMI mark, in which it has common law rights.

101.    Devolver has continuously used the HOTLINE MIAMI mark in commerce in the United States since at least 2012 in connection with publishing Hotline Miami, including through publishing and promoting the game.

102.    Through Devolver's longstanding and exclusive use of the HOTLINE MIAMI mark, including use, advertising, sales, and promotion of the mark, the HOTLINE MIAMI mark has come to identify Devolver (and exclusive licensor Dennaton) as the source of Hotline Miami

and has acquired distinctiveness and goodwill. Consumers associate the mark with Devolver and Devolver's Hotline Miami products and services.

103. Without authorization, Defendants have used in commerce, and continue to use in commerce, the HOTLINE MIAMI mark in connection with the advertising, promotion, distribution, offering for sale, and/or sale of Defendants' infringing products, including through their above-described websites and social media.

104. Defendants' use of the HOTLINE MIAMI mark constitutes use of a false designation of origin or false and misleading representation in interstate commerce that wrongfully and falsely designates, describes and represents that Defendants' infringing products and services are connected, affiliated or associated with, or authorized by Devolver. Defendants' conduct has caused actual confusion and is likely to cause confusion as to Defendants' affiliation, connection or association with Devolver, or as to the origin, sponsorship, approval or authorization of Defendants' infringing products or services in violation of 15 U.S.C. §1125(a).

105. Defendants knew of Devolver's rights in Hotline Miami and the HOTLINE MIAMI mark, and their infringement has been knowing, willful, and deliberate.

106. Defendants' activities have damaged, and threaten to continue damaging, Devolver's reputation and goodwill.

107. Devolver has been, and continues to be, damaged by such acts in a manner that cannot be fully measured or compensated in economic terms and therefore have no adequate remedy at law, constituting irreparable harm and entitling Devolver to permanent injunctive relief under 15 U.S.C. § 1116.

108. Devolver is entitled to the relief provided by 15 U.S.C. § 1117(a), including, but not limited to, Defendants' profits, Devolver's damages, and costs of this action. Because Defendants' conduct is willful and egregious, this is an exceptional case and Devolver is also entitled to recover its reasonable attorneys' fees under 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION

### Copyright Infringement Under 17 U.S.C. § 101

109.    Devolver realleges and incorporates each and every allegation of the foregoing paragraphs as though fully set forth herein.

110.    Devolver is the exclusive licensee of valid and registered copyrights in the Hotline Miami IP.

111.    By creating a new inventory of Authorized Merchandise without authorization and creating entirely new unauthorized and infringing derivative work products, ESC-Toy has engaged in acts of direct copyright infringement, including unauthorized reproduction, distribution, and display of elements of the Hotline Miami IP of unauthorized derivative versions thereof. In addition, Mr. Scarecrow has engaged in acts of direct copyright infringement by designing, creating, marketing, and distributing unlawful derivative work products and unlawfully seeking copyright registrations for these unlawful products. Devolver has never authorized or given consent to Defendants' use of Hotline Miami IP in this manner.

112.    Each such underlying infringement by Defendants constitutes a separate and distinct act of infringement.

113.    Defendants' acts of infringement were and are willful, in disregard of, and with indifference to the rights of Devolver in the Hotline Miami IP.

114.    As a direct and proximate result of the infringements alleged herein, Devolver is entitled to damages and to Defendants' profits from their sale of unauthorized infringing Hotline Miami products and unlawful derivative work products, in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Devolver is entitled at its election to maximum statutory damages of $150,000 for each copyrighted work infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

115.    As a result of Defendants' conduct, Developer has sustained irreparable injury for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants

will continue to infringe Devolver's rights in Hotline Miami. Devolver is therefore entitled to permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## PRAYER FOR RELIEF

THEREFORE, Devolver respectfully requests that this Court enter judgment in its favor against Defendants and grant the following relief:

A.      An order finding that Defendants have infringed Devolver's rights in the Devolver IP, including its copyrights in the Hotline Miami IP under the Copyright Act and that their infringement was willful;

B.      An order finding that Defendants have infringed Devolver's rights in the DEVOLVER DIGITAL mark and HOTLINE MIAMI mark under the Lanham Act and that their infringement was willful;

C.      An injunction restraining Defendants, and each of their agents, servants, employees, attorneys, successors and assigns, affiliates and all persons, firms, and corporations acting in concert with them, from directly or indirectly violating Devolver's rights under the Copyright Act and the Lanham Act, from infringing the Devolver IP in any manner, and from falsely representing or suggesting that Devolver sponsors, endorses, approves, or otherwise is affiliated with Defendants and their products and services,

D.      An order directing that Defendants file with the Court and serve upon counsel for Devolver within 30 days after entry of such order or judgment a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

E.      An order directing Defendants to cancel and or void the fraudulently obtained copyright registrations based on unlawful, derivative works of the Hotline Miami IP;

F.      An award to Devolver of damages it has sustained or will sustain by reason of Defendants' conduct, including without limitation all profits derived by Defendant from such conduct, and/or, at its election, statutory damages;

G.      Devolver's costs and reasonable attorneys' fees;

- 38 -

H.      Prejudgment and post-judgment interest; and

I.      All such further and additional relief, in law or in equity, to Devolver may be entitled or which the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

Dated: February 2, 2026                              Respectfully submitted,

*/s/Ryan Tyz*
Ryan Tyz (CA State Bar 234895)
ryan@tyzlaw.com
Ciara McHale (CA State Bar 293308)
ciara@tyzlaw.com
**TYZ LAW GROUP PC**
1 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: 415.868.6900

*Attorneys for Plaintiff*
*Devolver Digital, Inc.*