IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEVOLVER DIGITAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:26-CV-248-RP |
| | § | |
| ESC-TOY, LTD. and ERICK CHATEL, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is a Motion to Transfer filed by Defendants ESC-TOY, LTD. ("ESC-TOY") and Erick Chatel, who goes by the pseudonym Erick Scarecrow, ("Chatel") (together, "Defendants"). (Dkt. 10). Plaintiff Devolver Digital, Inc. ("Plaintiff") filed a response, (Dkt. 11), and Defendants filed a reply, (Dkt. 12). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

## I. BACKGROUND

Plaintiff filed its Complaint on February 2, 2026, bringing copyright and trademark infringement claims against Defendants. (Compl., Dkt. 1). Plaintiff is a "boutique video game label specializing in publishing indie games, including the widely successful top-down shooter Hotline Miami franchise developed by Denton Games." (Resp., Dkt. 11, at 6). Plaintiff alleges that it is "is the exclusive licensee of copyrights and trademarks in the Hotline Miami video game franchise (the 'Hotline Miami IP') and the owner of distinctive, protectable trademarks in its own trade name, DEVOLVER DIGITAL (together with the Hotline Miami IP, the 'Devolver IP')—all of which Defendants have infringed and are continuing to infringe willfully to [Plaintiff's] severe detriment." (Compl., Dkt. 1, at 2). Plaintiff seeks an order from the Court finding willful infringement and issuing a permanent injunction against Defendants. (*Id.* at 39).

1

As additional background, on April 30, 2015, Plaintiff entered into a merchandising fulfillment agreement (the "Agreement") with ESC-TOY, a merchandising company founded and operated by Chatel. (Compl., Dkt. 1, at 3; Agreement, Dkt. 10-1). According to Plaintiff, the Agreement granted ESC-TOY "*only* the right to create and sell merchandise using the Hotline Miami IP within the limited confines of that agreement, including figures, pins, prints, and apparel," ("the Authorized Merchandise"). (Compl., Dkt. 1, at 3). "The contract conveyed no intellectual property rights to ESC-[TOY]." (*Id.*). In May 2019, Plaintiff terminated the agreement. (*Id.*). ESC-TOY acknowledged and accepted this termination in a letter dated May 31, 2019. (May 31, 2019 Letter, Dkt. 11-2). ESC-TOY retained the right only to sell off any remaining inventory of the products that ESC-TOY and Plaintiff designed and produced together ("the Collaboration Products"). (*Id.* at 2; Agreement, Dkt. 10-1, at 2–3). In ESC-TOY's counsel's May 31, 2019 letter to Plaintiff, ESC-TOY's counsel stated: "[P]lease be advised that my client retains all rights, including copyright, to any and all of its creative contributions to the design and production of the Collaboration Products (collectively 'ESC Copyrightable Elements')." (May 31, 2019 Letter, Dkt. 11-2, at 3). Plaintiff's counsel wrote back on June 26, 2019 acknowledging "[ESC-TOY's] copyrightable elements of the Collaboration Products" but demanding that Defendants "please ensure that [ESC-TOY] immediately stops using [Plaintiff's] name, logo, etc. in marketing and/or selling any Collaboration Products" and "ensure that [ESC-TOY] is no longer selling any of [Plaintiff's] Products that are not Collaboration Products." (June 26, 2019 Letter, Dkt. 12-1, at 3).

Plaintiff claims that—after termination of the Agreement—Defendants "have continued to willfully reproduce, display, and distribute unauthorized derivative works of the Hotline Miami games and to use the HOTLINE MIAMI and DEVOLVER DIGITAL trademarks in commerce without authorization"; "have also made additional inventory of the Authorized Merchandise in

violation of [Plaintiff's] rights in the Hotline Miami IP"; and have "designed, manufactured, and sold additional unauthorized Hotline Miami products." (Compl., Dkt. 1, at 3).

Plaintiff is a Delaware corporation with a business address in Wilmington, Delaware; its co-founders are located in Austin, Texas and were present there when the Parties entered into the 2015 Agreement. (*Id.* at 4). ESC-TOY is a New York company with its principal place of business in Nevada. (*Id.*). Chatel, the founder of ESC-TOY, is an individual who resides in Nevada. (*Id.*).

On March 3, 2026, Defendants filed an opposed Motion to Transfer, arguing that this Court should transfer the case to the United States District Court for Nevada. (Mot., Dkt. 10, at 1). Defendants argue that the Agreement underlies all of Plaintiff's claims and includes a forum selection clause that mandates a Nevada forum. (*Id.*). Defendants further argue that transfer to Nevada will enhance the convenience of the parties and witnesses and is in the interest of justice. (*Id.* at 4–5).

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In considering a § 1404(a) motion to transfer, a district court should normally begin by evaluating both the convenience of the parties and various public-interest considerations." *Davis v. Valsamis, Inc.*, 181 F. Supp. 3d 420, 425 (S.D. Tex. 2016) (citing *Atl. Marine Const. Co. v. U.S. D. for W.D. Tex.*, 571 U.S. 49, 62–63 (2013)).

That analysis differs when a court evaluates a motion to transfer based on a forum selection clause. *Id.* "A forum selection clause is a significant factor that figures centrally in the district court's calculus." *Id.* at 424–25 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "The court must first determine whether a contractually valid forum selection clause exists." *Buc-ee's, Ltd. v.*

*Bucks, Inc.*, 262 F. Supp. 3d 453, 460 (S.D. Tex. 2017) (citing *Atl. Marine*, 571 U.S. at 62–63). If one does, the court must determine whether the case falls within its scope. *Id.* (citing *Atl. Marine*, 571 U.S. at 62–63). If a valid forum selection clause exists and the claims are within its scope, the court "should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co.*, 571 U.S. at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a motion to transfer pursuant to a valid forum selection clause be denied. *Id.*

### III. DISCUSSION

#### A. Whether the Forum Selection Clause Governs Plaintiff's Claims

The Agreement between the Parties provides:

> Any claim or dispute arising out of or in connection with this Agreement shall be governed by laws of the State of Nevada applicable to agreements deemed entered into and wholly performed therein. Each party grants to the State and Federal courts located in [Las] Vegas, Nevada, exclusive jurisdiction to hear any claim or dispute arising out of this Agreement.

(Agreement, Dkt. 10-1, at 7). Defendants argue that "[b]ecause all of Plaintiff's claims relate to the Agreement, the forum selection clause is applicable to all of Plaintiff's claims." (Mot., Dkt. 10, at 2). Plaintiff responds that this forum selection clause is no longer operative and cannot support transfer because the Agreement was terminated nearly seven years ago in 2019. (Resp., Dkt. 11, at 5). Further, Plaintiff contends that the Agreement's "express terms confirm that the forum selection clause did not survive termination." (*Id.*). Defendants counter that (a) the forum selection clause survived termination of the Agreement and (b) the "Collaboration Provisions" of the Agreement, which relate to all of Plaintiff's claims, remain operative, and the forum selection clause governs disputes about them. (Reply, Dkt. 12, at 2–8).

First, the Court addresses whether the forum selection clause survived termination of the Agreement. While the Fifth Circuit "has not addressed the precise question of whether dispute resolution provisions within a contract survive the termination or expiration of that contract," the

4

Circuit has found that "[a]bsent an expression of contrary intent," "[w]hen a clause purports to cover all disputes relating to the contract, that clause covers all disputes relating to the contract regardless of when that dispute arises." *Strata Heights Int'l Corp. v. Petroleo Brasileiro, S.A.*, 67 F. App'x 247, 2003 WL 21145663, at *7 (5th Cir. 2003).

The Agreement also provides that "[p]rovisions of this Agreement which, by their nature or sense, are intended to survive termination of this Agreement, will survive of this Agreement." (Agreement, Dkt. 10-1, at 7). Plaintiff argues that the Agreement's express terms "confirm that the forum selection clause did not survive termination." (Resp., Dkt. 11, at 5). To substantiate this argument, Plaintiff points to the fact that the "only reference to any surviving rights or obligations" in the Agreement is contained in Section 9, titled "Returns to You and Disposal," which states: "ESC's exclusive right to sell the remainer of all Collaboration Products shall survive the termination of this Agreement." (*Id.* at 8). Defendants counter that a forum selection clause certainly fits within those provisions of the Agreement which "by their nature or sense" are intended to survive termination, and that Section 9 does not create the negative inference Plaintiff asserts because it "addresses a substantive right that might otherwise be ambiguous as to survival." (Reply, Dkt. 12, at 3).

The Court agrees with Defendants, given the Fifth Circuit's instruction that "[a]bsent an expression of contrary intent," "[w]hen a clause purports to cover all disputes relating to the contract, that clause covers all disputes relating to the contract regardless of when that dispute arises." *Strata Heights*, 2003 WL 21145663 at *7. There is no expression of contrary intent in the forum selection clause at issue, and a forum selection clause is certainly one which "by [its] nature [and] sense" is intended to survive termination. (Agreement, Dkt. 10-1, at 7). *See Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 569 (S.D. Tex. 2020) ("Dispute resolution provisions such as forum selection clauses typically apply to post-contractual disputes unless the plain language of the

contract indicates the parties intended those provisions to expire."). *See also Giant Eagle Inc. v. Excentus Corp.*, No. 3:14-CV-1195-B, 2014 WL 12531173, at *9 (N.D. Tex. Aug. 2, 2014) ("As numerous courts have held, a forum selection clause remains enforceable even after a contract has expired.").

Next, the Court addresses whether all of Plaintiff's claims relate to the Agreement. Plaintiff argues that its allegations "do not arise under or relate to the long-terminated Agreement but instead center on Defendants' ongoing willful infringement of the Devolver IP after the Agreement was terminated." (Resp., Dkt. 11, at 8). Further, Plaintiff contends its allegations "do not concern, for example, any Collaboration Product inventory that existed at the time of termination." (*Id.*). Rather, Plaintiff alleges Defendants are developing, creating, marketing, and selling new and different products without authorization. (*Id.*). Plaintiff points specifically to two instances of Defendants advertising "new" products more than four and six years, respectively, after the termination of the Agreement. (*Id.*). Plaintiff also argues that Chatel was "not a party to the terminated Agreement and never had any right to exploit the Devolver IP." (*Id.* at 9).

Defendant counters that the actual text of the forum selection clause, which dictates that it covers claims "arising out of **or in connection with**" the Agreement, makes clear that it covers all of Plaintiff's claims. (Reply, Dkt. 12, at 6) (emphasis added). Defendant argues that "[t]he phrase 'in connection with' is broader than 'arising out of' and captures claims that have a significant relationship to the Agreement even if they do not directly arise under it." (*Id.*). As such, Defendant proposes that Plaintiff's infringement claims are "at minimum 'in connection with' the Agreement because they require interpreting the Agreement to determine what rights it granted, what ESC[-TOY] retained, and what conduct is authorized." (*Id.* at 6–7).

Beginning with Plaintiff's argument concerning Chatel not being a party to the terminated Agreement, the Court finds that Chatel's relationship to ESC-TOY—as its founder and operator—

is "so inextricably intertwined that he should be subject to the forum selection clause," especially given that Chatel himself signed the Agreement as ESC-TOY's President. *Texas Source Grp., Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997) (citing *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 n.5 (9th Cir. 1988) ((forum selection clause applied to nonparties because their alleged conduct was "so closely related to the contractual relationship")).

Next, Plaintiff's allegations suggest to the Court that ESC-TOY and Chatel's relationship and involvement with the Devolver IP stems solely from the Agreement, despite its eventual termination. The Court is persuaded by the reasoning in a similar case out of the United States District Court for the Southern District of New York:

> Even though the contract has expired, plaintiff's claims for a declaratory judgment with respect to defendant's potential unfair competition, trademark infringement, misappropriation and implied contract claims involve rights arising out of the contract that defendant might assert against plaintiff. Plaintiff's entire business relation with defendant with respect to the proposed award program stemmed from the contract between the two parties. Any determination with respect to plaintiff's claims will require consideration of the contract and of the parties' respective rights pursuant to the contract. Therefore, it is clear that plaintiff's action arises pursuant to the contract.

*YWCA v. HMC Entertainment, Inc.,* No. CIV. A. 91–7943, 1992 WL 279361, at *1 (S.D.N.Y. Sept. 25, 1992). Here, because Defendants' "entire . . . relation" with the Devolver IP stems from the Agreement between the parties, the Court finds that Plaintiff's infringement claims against Defendants necessarily arise from and are in connection with the Agreement. *See id.*

Additionally, Plaintiff asserts that the forum selection clause applies only to claims "arising out of" the Agreement—"which is much narrower than 'relating to' the Agreement." (Resp., Dkt. 11, at 12). The plain language of the forum selection clause indicates the opposite. It explicitly covers "[a]ny claim or dispute arising out of **or in connection with** [the] Agreement." (Agreement, Dkt. 10-1, at 7) (emphasis added). Plaintiff describes its own claims as centering on "Defendants' willful post-termination infringement and exploitation of the Devolver IP, including through creating so-called 'spinoffs' of the Hotline Miami franchise, registering copyrights in newly created and

infringing derivative works, and ongoing advertising and selling of unauthorized products in violation of Devolver's rights in the Devolver IP." (Resp., Dkt. 11, at 12). The Court finds that this statement confirms its understanding that Defendants' alleged infringement both arises out of and is certainly, at minimum, in connection with the Agreement. (*See* Reply, Dkt. 12, at 7 (arguing that "every allegation requires Agreement interpretation—what is a 'Collaboration Product,' what did the license authorize, what survived termination, and whether ESC's works are 'authorized' or not")). *See also Morgan-Rinehart v. Van de Perre*, No. A-16-CA-01327-SS, 2017 WL 1383933, at *8 (W.D. Tex. Apr. 12, 2017) ("Clauses that extend only to disputes 'arising out of' a contract are construed narrowly, while clauses extending to disputes that 'relate to' or 'are connected with' the contract are construed broadly.") (quoting *Wellogix, Inc. v. SAP Am., Inc.,* 58 F. Supp. 3d 766, 778 (S.D. Tex. 2014)).

### B.  Whether Other Factors Weigh Against Transfer

As *Atlantic Marine* makes clear, if a valid forum selection clause exists, a district court "should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co.*, 571 U.S. at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a motion to transfer pursuant to a valid forum selection clause be denied. *Id.* No such extraordinary circumstances exist here. Because the parties have signed a valid forum selection clause, Plaintiff's choice of forum and the private-interest factors bear no weight. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016). While the public-interest factors can, on rare occasions, defeat a forum selection clause, that extremely high burden is not met here.

The first public interest factor examines court congestion and "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x

8

929, 932 (Fed. Cir. 2020). While Plaintiff presents some evidence[1] that the time to trial in the District of Nevada is somewhat slower than in the Western District of Texas, this evidence is insufficient to create the exceptional circumstances required to overcome a forum selection clause. This Court is acutely aware of the particularly heavy civil caseload here in the Austin Division—the undersigned has over 700 active civil cases and is one of only four active federal district judges in the Division.[2] While the District of Nevada seems to also carry a heavy civil caseload, the factor cannot be said to weigh *against* transfer, much less to the degree needed to disregard a valid forum selection clause.

The second public interest factor examines the benefits of deciding local issues at home. This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *See In re Google LLC*, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021). Plaintiff claims that it resides in this district, weighing against transfer. (Resp., Dkt. 14, at 9). On the other hand, Defendants are both residents of Nevada. (Mot., Dkt. 10, at 3–4). Both arguments are inapplicable, as the local interest analysis focuses on "the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) (emphasis in original). Defendants assert that "[k]ey third-party witnesses—including Dennis Wedin of Dennaton Games (the actual Hotline Miami IP owner), a citizen and resident of Sweden—are not located in Texas." (Reply, Dkt. 12, at 9). As such, this factor is likely neutral and clearly does not lean in favor of keeping the case in the Austin Division of the Western District of Texas.

The last two factors are also neutral. Both forums are equally familiar with federal law and there are no issues regarding conflict of laws. Because three factors are neutral and one weighs,

---

[1] Plaintiff represents that "[t]he September 30, 2025 Federal Court Management Statistics show that the Western District of Texas has a median time to trial of 32 months, while the District of Nevada has a median time to trial of 57.3 months." (Resp., Dkt. 11, at 18).

[2] The Las Vegas Division—where Defendants seek transfer to—has seven active federal district judges.

based on Plaintiff's evidence alone, only slightly against transfer, Plaintiff has not met its extremely high burden of showing the forum selection clause should be set aside on the basis of the public interest factors. Accordingly, the Court will grant the motion to transfer.

### V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' Motion to Transfer, (Dkt. 10), is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **TRANSFERRED** to the United States District Court for the District of Nevada, Las Vegas Division.

**SIGNED** on May 14, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE