Leah Martin, Esq.
Nevada Bar No. 7982
Kevin Hemanowski, Esq.
Nevada Bar No. 10612
LEAH MARTIN LAW
601 South Rancho Drive, Suite C-26
Las Vegas, Nevada 89106
Telephone: (702) 420-2733
Facsimile: (702) 330-3235
lmartin@leahmartinlv.com
khejmanowski@leahmartinlv.com

Frank F. Sommers, Esq.
(Pro Hac Vice)
SOMMERS LAW PC.
227 Princeton Avenue
Mill Valley, California 94941
Telephone: (415) 308-4004
ffs@sommerslawpc.com

Paul J. Steiner, Esq.
(Pro Hac Vice)
580 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 981-6100
Facsimile: (415) 984-0950
paul@sfpaulaw.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DEVOLVER DIGITAL, INC., | Case No.: 2:26-cv-01534-APG-BNW |
| Plaintiff, | |
| | **DEFENDANTS/COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S SPECIAL MOTION TO DISMISS COUNTERCLAIMS** |
| v. | |
| ESC-TOY, LTD. and ERICK CHATEL, | |
| Defendants. | |
| ESC-TOT, LTD. and ERICK CHATEL, | |
| Counterclaimants, | |
| v. | |
| DEVOLVER DIGITAL, INC., TYZ LAW GROUP PC, JONATHAN DOWNING, AND DOES 1-100, Counterdefendants | Chief Judge Andrew P. Gordon Magistrate Judge Brenda Weksler |

## DEFENDANTS/COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S SPECIAL MOTION TO DISMISS COUNTERCLAIMS

### I.      INTRODUCTION

Devolver's special motion asks this Court to resolve, at the pleading stage and on a one-sided evidentiary record, a fact question the anti-SLAPP statute makes Devolver's burden: whether its sworn takedown notices and demands were made without knowledge of their falsity. They were not — and Devolver's own documents prove it. Two features of federal practice frame the motion. First, in this Circuit a state anti-SLAPP special motion is not adjudicated on the state statute's own terms. Under Planned Parenthood Federation of America, Inc. v. Center for Medical Progress, 890 F.3d 828, 833–34 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018), a special motion that challenges the legal sufficiency of a claim is analyzed under the Rule 12(b)(6) standard, and a special motion that challenges the factual sufficiency of a claim is analyzed under Rule 56, with discovery. The discovery-limiting features of anti-SLAPP practice cannot apply in federal court. Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001). The en banc court reaffirmed this framework just months ago, confirming that such motions are "subject to the same standards" as Rule 12(b)(6) or Rule 56 motions and "follow the same discovery processes as those motions." Gopher Media LLC v. Melone, 154 F.4th 696 (9th Cir. 2025) (en banc). Second, Gopher Media, cited supra, was independently stripped anti-SLAPP movants of the interlocutory appeal that made these motions a delay device, overruling Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003), the court held that a denial is not immediately appealable. Devolver thus cannot obtain pleading-stage dismissal on a factual "good faith" showing, and cannot stall this case by appealing a denial.

On its merits, Devolver bears the burden of establishing, by a preponderance of the evidence, that every challenged communication was "truthful or … made without knowledge of its falsehood," which supports the *Gopher* matter. NRS 41.637; Stark v. Lackey, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020). It cannot do so. In June 2019, years before any dispute, Devolver's own counsel acknowledged in writing that ESC holds copyrightable elements in the Collaboration Products, that Section 9's rights survive termination, and that Devolver would negotiate a license fee before using ESC's elements. Opposing transfer from Texas in 2026, Devolver told the Honorable Judge Pitman that Section 9 is the Agreement's provision on surviving rights.

Devolver's own conduct, including hosting the "Erick Scarecrow x Dennaton" collaboration on hotlinemiami.com and featuring ESC's figures in its 2023 marketing, it was treated these works as authorized. And, when counsel presented these rights and demanded withdrawal, Devolver refused. Sworn notices that then branded the same works categorically "unlicensed," and were not made without knowledge of falsity; at an absolute minimum, this record creates the evidentiary conflict that defeats a special motion. The counterclaims Devolver labels "retaliation" is the contractual half of a dispute a federal court has already held is contract-rooted. The Honorable Judge Pitman found that Defendants' "entire relation" with the Devolver IP "stems from the Agreement," and that Devolver's claims "necessarily arise from and are in connection with it." ECF No. 18 at 7. On the same day, the Honorable Judge Chen denied dispositive sanctions against ESC and found it "a sophisticated industry player independently familiar with video game licensing practices." ECF No. 45-6 at 2, 19–20. Parties litigating the other side of the same Agreement, survival, warranties, indemnity,

commissions, forum are not engaged in a strategic lawsuit against public participation. The motion should be denied.

## II.     STANDARD OF REVIEW

In federal court, the procedural machinery of a state anti-SLAPP statute yields to the Federal Rules. A special motion that "challenges only the legal sufficiency of a claim" is decided under Rule 12(b)(6); a special motion that "challenges the factual sufficiency of a claim" is "treated as though it were a motion for summary judgment and discovery must be permitted." Planned Parenthood, 890 F.3d at 833–34; and Metabolife Int'l, Inc. v. Wornick, 264 F.3d at 846 (the "discovery-limiting aspects" of anti-SLAPP practice "collide with the discovery-allowing aspects" of Rule 56 and do not apply in federal court). Gopher Media, cited *supra,* reaffirms that framework and holds, in addition, that a denial is not immediately appealable. The Gopher Media LLC v. Melone, 154 F.4th 696. regarding Nevada substantive law supplies the elements. At prong one, the movant must establish "by a preponderance of the evidence" that each claim is based on a good-faith communication within one of NRS 41.637's four enumerated categories — which requires showing both (a) that the communication falls within a protected category and (b) that it "is truthful or is made without knowledge of its falsehood." Stark, 136 Nev. at 40, 458 P.3d at 345, and Williams v. Lazer, 137 Nev. 437, 495 P.3d 93 (2021). Conflicting evidence on knowledge of falsity defeats the showing. Delucchi, 133 Nev. 290, 396 P.3d 826. Only if the movant carries that burden does subsection prong two ask whether the non-movant's claims have "minimal merit" on prima facie evidence viewed in the light most favorable to the non-movant. Smith v. Zilverberg, 137 Nev. 65, 70–71, 481 P.3d 1222, 1229 (2021); Wynn v. Associated Press, 140 Nev., Adv. Op. 56, 555 P.3d 272, 276 (2024).

## III. ARGUMENT

A. Under the Federal framework, the Motion fails on either branch of the fork.

1. Treated as a legal-sufficiency challenge, the motion is a Rule 12(b)(6) motion, and the Tyz Declaration is out. If the motion challenges only the legal sufficiency of the counterclaims, the Rule 12(b)(6) standard applies: the counterclaim allegations are taken as true, all reasonable inferences run to Counterclaimants, and extrinsic evidence is excluded. Planned Parenthood v. Center for Medical Progress, 890 F.3d 838 at 833–34 (9th Cir). Devolver's attempt to introduce seven exhibits through "incorporation by reference" runs directly into the case it cites for the doctrine: Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998–1003 (9th Cir. 2018), warns that incorporation "is not a tool for defendants to short-circuit the resolution of a well pleaded claim" by inserting their own evidence and disputing the pleaded facts. The Court may notice the existence of court filings, not the truth of their contents or a movant's characterization of them.

2. Treated as a factual challenge, which its "good faith" showing plainly is — the motion converts to Rule 56, and does not save it. Devolver does not merely test the pleadings; it asks the Court to find, as fact, that its communications were made in good faith, supporting that request with a sworn declaration, correspondence, and characterizations of other courts' records. A motion that "challenges the factual sufficiency of a claim" is treated as a summary-judgment motion, and "discovery must be allowed." Counterclaimants are entitled to Rule 56(d) relief before any such determination. There, the court observed that Planned Parenthood's discovery rule, page two (2) was linked to the California statute's probability of prevailing prong; the version of NRS 41.660 would rule over this matter. That reasoning does not reach this case for two independent reasons. First, the operative Nevada

statute now contains exactly such a prong: NRS 41.660(3)(b) requires the non-movant to "demonstrate with prima facie evidence a probability of prevailing on the claim," and NRS 41.665(2) imports California's burden of proof, so the summary-judgment-like collision Planned Parenthood, cited *supra*, identified is present here, not absent. Second, the anti-SLAPP provisions would prevail, and discovery would be postponed. The challenge for discovery would have changed nothing; Devolver has instead chosen to put on evidence, the Tyz declaration and seven exhibits, offered to prove good faith, which is the factual challenge that triggers Rule 56 conversion under Planned Parenthood litigation, cited *supra*, itself. A movant that litigates good faith on a sworn record cannot simultaneously deny its opponent the discovery that Rule 56 guarantees. The declaration itself illustrates why discovery is required. Mr. Tyz attests to the Kelly letters only on "information and belief," though appear to agree to personal knowledge to information contained in the aforementioned Kelly letters. Devolver states there is insufficient under Rule 56(c)(4), and not factual evidence which must be presentable in Court as evidence. Devolver attaches a single representative DMCA notice while the record shows a campaign of at least seven notices across two platforms, most of which Devolver has not produced; again, which would have to be presented as evidence at Court. ECF No. 45 at 2–3. A party cannot ask a court to find its sworn statements truthful while withholding most of the sworn statements.

B.     Prong One Fails: Devolver Cannot Prove Its Statements Were Made Without Knowledge of Falsity. Even accepting, arguendo, that the Nevada prong-one showing survives federalization as a substantive burden Devolver must carry, Devolver cannot carry it. Prong one is Devolver's burden, by a preponderance, statement by statement. Stark v. Lackey, cited *supra*, 136 Nev. at 40, 458 P.3d at 345. The record, much of consisting of

Devolver's own words, forecloses the showing and, at minimum, creates the evidentiary conflict that defeats the motion under Delucchi, full cite noted *supra*.

1.      The Sexton Letter: Devolver's own counsel acknowledged the rights the notices deny. On June 26, 2019, Devolver's then-counsel wrote that Devolver had no intention of using "any" of the copyrightable element's ESC claimed in its creative contributions, and committed that Devolver would "contact Defendants and negotiate an appropriate license fee" before doing so. ECF No. 12-1. The letter is a statement by Devolver's agent within the scope of the representation, and admissible against Devolver under Fed. R. Evid. 801(d)(2)(C)–(D). Every later sworn statement that the same works are categorically "unlicensed" and that ESC holds nothing was made with that acknowledgment in hand. Good faith under NRS 41.637 asks whether the speaker knew the statement false when made; the Sexton Letter is documentary knowledge of false statements.

2.      Devolver's own transfer briefing conceded Section 9's survival. Opposing transfer, Devolver told the Honorable Judge Pitman that the Agreement's provision on surviving rights is Section 9, quoting its text that "ESC's exclusive right to sell the remainder of all Collaboration Products shall survive the termination of this Agreement." ECF No. 18 at 4–5 (quoting Devolver's Resp., ECF No. 11, at 5, 8). Statements of fact in a party's briefs may be treated, in the district court's discretion, as admissions of that party or as an estoppel. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226–27 (9th Cir. 1988). A position Devolver's own counsel acknowledged in 2019 and Devolver itself briefed in 2026 is not one Devolver can now swear no reasonable basis supports.

///

///

3. Devolver's own marketing conduct contradicts the sworn characterization. The amended counterclaims plead — with sources — that Devolver's official hotlinemiami.com promoted the "Erick Scarecrow x Dennaton" collaboration and directed customers to "Visit DEVOLVER DIGITAL for official merch"; that Devolver's 2023 "Holiday Special" featured ESC's collaboration figures; that Section 4 granted a worldwide license; that Section 18(c) warranted the products' sale "will not violate or infringe the rights of any third party"; and that Section 5 obligated Devolver itself to market these products through the very channels its notices then attacked. Dkt. 40 ¶ 48. A party that markets goods as its own official collaboration merchandise cannot simultaneously hold a subjective good-faith belief that those goods are infringing — and Devolver's brief does not engage these allegations; it quotes Dkt. 40 ¶ 48's first clause and represents that the count is pled "without facts." ECF No. 44 at 16. The Court is invited to read the paragraph. The Agreement's text forecloses the sworn characterization at an even more basic level: Section 13 vests legal ownership of the Collaboration Products in ESC. Compl. Ex. A, Dkt. 1- 1, § 13; Dkt. 40. A party cannot in good faith swear that the owner's sale of its own goods infringes. Devolver's own transfer exhibit says the same thing in retail form: the fifty-eight-page "LIFETIME COLLABORATIONS" catalog Devolver filed shows retail packaging crediting "FIGURE DESIGNS BY DENNIS WEDIN, JONATAN SÖDERSTRÖM and ERICK SCARECROW." Doc. 11-3 at 26.

5. The March 12, 2026 refusal: maintaining the statements after being shown the rights. After Counterclaimants' counsel demanded withdrawal of the notices and presented ESC's rights, Devolver's counsel refused, stating that Devolver "will continue to enforce its intellectual property rights as it sees fit." Dkt. 40 ¶ 28. Under Lenz v. Universal Music Corp.,

815 F.3d 1145, 1153–54 (9th Cir. 2016), a sender who fails to consider whether the targeted use is "authorized by … the law," with a surviving contractual license is legal authorized, and proceeds in willful blindness, which satisfies the knowledge requirement. Continuing to use copyright holder rights without permission, and documented notice of the rights is stronger still. And where the sender does form actual knowledge, Rossi v. Motion Picture Assn of Am. Inc., 391 F.3d 1000, 1004–05 (9th Cir. 2004), is satisfied in this matter, and had "good faith" belief, and "there must be a demonstration of some actual knowledge of misrepresentation, while Devolver was infringing of ESC's copyright. The Sexton Letter plus the March 12 refusal supply it, which only serves to support and strengthen ESC's claims. Devolver's conduct confirms the point. During the 2019 termination it offered to purchase ESC's rights and remaining inventory for approximately $85,000, vastly undervaluing and down playing. against ESC's roughly $200,000 valuation, notwithstanding Devolver's counsel expressed interest in purchasing Collaboration Products from ESC. "Devolver does not offer to buy what it already owns." Dkt. ECF No. 40 ¶ 21; ECF No. 12 at 8. A party that negotiated a price for these rights in 2019 cannot swear in 2026 that it believed they never existed.

6.      The eighteen-month silence completes the picture, and most definitely does not reflect "good faith efforts" to resolve their differences. In January 2023, ESC gave Devolver written notice identifying Devolver's own unauthorized use of five of ESC's registered works, offered a royalty structure, and reminded them of their counsel's 2019 commitment. Again, Devolver said nothing for eighteen months, then opened through new counsel by branding ESC's rights "patently false." Dkt. 40 ¶¶ 24–26. That sequence is not the conduct of a rightsholder policing infringement in good faith; it is the conduct the anti-

SLAPP statute makes Devolver's burden to explain their justification by a preponderance, with admissible evidence, still not produced to date, and which cannot be done on the pleadings.

7. Devolver's own authorized biography, identified *infra*, corroborates the knowledge — and refutes the "consistent for years" claim. Devolver's subjective knowledge is corroborated by its own authorized corporate biography — Devolver: Behind the Scenes — Business and Punk Attitude (Third Editions, Oct. 2019) published the same season as the Sexton Letter and built on its founders' interviews. The book's own origin story attributes Hotline Miami's creation to Dennaton, with Devolver as its publisher (at pp. 54–61). It documents contract sophistication at every senior level: Devolver's president is described by his colleagues as "the negotiator" who loves contracts and personally handles the most sensitive agreements (at pp. 186, 194); a co-founder taught a GDC session on publisher contracts (at 148); no two Devolver agreements are alike (at p. 101); and in 2015, the year Devolver signed this Agreement, and is the approximate year the book records the company professionalizing to milestone-based agreements (at pp. 99–106). It documents that when Devolver deals with a true third-party rights holder it papers everything through counsel; including, an apparently lawyer-heavy HBO license negotiation for one title (at p. 196); a specialty law firm retained for another's regulatory accuracy (at p. 198), inviting the question this record already poses: where is the equivalent signed writing behind Devolver's claimed Hotline Miami rights? It then closes with a co-founder's thesis: "the developer is always right, because it's their creations" (at p. 213). A party whose leadership published that identity in October 2019, while its own counsel was acknowledging ESC's copyrightable elements in the Sexton Letter. Therefore, it cannot carry a preponderance showing that its

later sworn "unlicensed" characterizations were made without knowledge of falsity claiming in its assertion that its statements have "remained consistent for years" (ECF No. 43 at 1). And, is answered by its own 2019 publications, and its motion concedes the core: Devolver "does not allege infringement by any Collaboration Product," ECF No. 43 at 14, the very goods Sections 9 and 13 commit to ESC. Under Stark, cited *supra*, a movant's declarations can carry prong one only in the absence of contradictory evidence, Stark, 136 Nev. at 43–44, 458 P.3d at 346–47. This record is saturated with contradictory evidence.

      C.      Independently, the Challenged Communications Fall Outside NRS 41.637's "good faith communications," and protected categories. Prong one has a threshold component that precedes any good-faith inquiry: the movant must show the communication falls within one of the four categories enumerated in NRS 41.637, which it does, in fact, fall into those categories. Stark, 136 Nev. at 40, 458 P.3d at 345. Devolver's communications simply do not fit, or fit the above-reference parameters. The 2024 Kelly cease-and-desist letters. NRS 41.637(3) protects statements "made in direct connection with an issue under consideration by a … judicial body … or any other official proceeding authorized by law." When the Kelly letters were sent in August and September 2024, no judicial body was considering anything. Devolver did not move forward with a lawsuit for another seventeen months. Nevada's related pre-litigation privilege reaches only communications made when litigation is "contemplated in good faith and under serious consideration". A fact-intensive question, Fink v. Oshins, 118 Nev. 428, 433, 49 P.3d 640 (2002), noting a seventeen-month gap, and a previous eighteen-month silence, and then a demand centered on surrendering copyright registrations rather than filing suit place squarely in dispute. The DMCA notices.

The only category Devolver can invoke for its platform notices is NRS 41.637(4): a communication "made in direct connection with an issue of public interest in a place open to the public or in a public forum." Both elements are contestable and cannot be resolved on the pleadings. Whether the trust-and-safety intake queues of X and Instagram — private, non-public legal-processing channels — are "a place open to the public or … a public forum" is doubtful; and whether a private, commercial dispute between two companies over collectible toy merchandise is "an issue of public interest" is at least a factual question. If the notices do not fall within a protected category, Devolver never reaches prong two, and the good-faith inquiry never arises.

D.    Counterclaims Grounded in Conduct, not communications, and are outside the Statute entirely. Nevada's anti-SLAPP statute protects communications; it does not immunize conduct. The interference and implied-covenant counterclaims rest substantially on Devolver's refusal, over months of negotiations, to provide the written authorization PM Studios required, with a refusal that killed a nine-game publishing opportunity in June 2025, before this litigation, and before any DMCA notice existed. PM Studios' principal wrote, contemporaneously: "my legal team just won't let me sign off on this project because of all the risks." A refusal to authorize is not a "written or oral statement" within any NRS 41.637 category. To the extent the challenged counterclaims rest on that conduct, the special motion does not reach them at all.

E.    Prong Two: Every Challenged Counterclaim Has Minimal Merit. Even if Devolver could carry prong one, prong two asks only whether the counterclaims have "minimal merit" on prima facie evidence viewed in Counterclaimants' favor, and ESC upholds the "minimal merit" in federal court, the inquiry collapses into whether the claims

survive Rule 12(b)(6) (or Rule 56 after discovery). Silver v. Zilverberg, 137 Nev. 65, at 70–71, 481 P.3d at 1222, 1229 (2021), and supports claims for defamation per se. Devolver's contrary arguments rest on two threshold doctrines it overstates and a series of element attacks the complaint, pleadings and answer, and pleadings on file.

1.    Nevada's litigation privilege does not sweep as Devolver claims. Nevada's absolute privilege is a defamation doctrine that the Nevada Supreme Court has pointedly declined to extend across all torts as California has, and it has never been applied to erase bargained-for contract rights. Devolver deploys it against breach of contract, implied covenant, interference, conspiracy, and deceptive trade practices alike; which is a California privilege, not a Nevada privilege. Moreover, communications to non-participants are privileged only if the recipient is "significantly interested" in the proceeding. A "case-specific, fact-intensive inquiry" that distinguishes "bona fide litigation activities" from "a public relations campaign." In Jacobs v. Adelson, 130 Nev. 408, 325 P.3d 1282, 1286–88 (2014); Fink, 118 Nev. 428 at 436 (2002), prelitigation and legal matters are absolutely privileged. Whether the trust-and-safety queues of X and Instagram were "significantly interested" in a Nevada lawsuit, or were the instruments of a deplatforming campaign, three sequential X notices and four Instagram notices submitted by Downing personally — cannot be resolved on the pleadings. And the privilege has no application to Counterclaim I(d): parties may contract about where they will litigate, and a claim for breach of that bargain sounds in contract, not in speech.

2.    Section 512(f) "preemption" is contested district-court law, not a bar. Devolver's preemption argument fails at the structural level before any case comparison. No

court of appeals, and no Ninth Circuit decision holds that § 512(f) preempts state-law claims arising from takedown notices. The statute contains no preemption clause. And § 301 preemption turns on equivalence: a state claim is preempted only where it protects rights equivalent to those under § 106 and contains no qualitatively different extra element. Counterclaimants' state claims carry extra elements, a contractual duty, malice, an agreement among distinct actors, that make them qualitatively different from a copyright claim. Devolver's authority is a single district-court line, Moonbug Enter. Ltd. v. Babybus (Fujian) Net. Tech. Co. Ltd., U.S.D.C., N.D. California (2002), which other district courts decline to follow; e.g., MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC, 730 F. Supp. 3d 740 (N.D. Ill. 2024), let takedown-based counterclaims proceed alongside § 512(f), holding that "whether a copyright owner formed a subjective good faith belief is, in most instances, a factual issue that is not appropriate for resolution on a motion to dismiss." "Preemption is incurable" is Moonbug's, cited supra, rhetoric about California counterclaims; it is neither the law of this Circuit nor a basis for dismissal with prejudice.

3.     Counterclaim I(b), (d)–(f): the contract theories stand — and sub-part surgery has no federal vehicle. I(d) am the cleanest: per the Honorable Judge Pitman's order establishes a mandatory Nevada clause, applicable to all of Devolver's claims, breached by the Texas filing. ECF No. 18. Transfer to Nevada; it does not immunize the breach from contract damages, and the fees and costs of the Texas detour are recoverable as damages for breach — not as fee-shifting. Though not universal, and an open question in Nevada, Courts recognize that a party may recover damages incurred as the direct and proximate result of an opponent's suit in a non-contractual forum. But a damage measure is not properly tested on a motion to dismiss. Devolver's request to strike subparts (b), (d)–(f) while leaving (a) and (c)

has no vehicle to support it: in federal court the special motion is analyzed as a Rule 12(b)(6) motion, which addresses claims, not clauses; excising allegations is Rule 12(f) territory with its own disfavored standard against Devolver pleadings and briefs.

4.      Counterclaim VI: knowledge and causation are pleaded and documented. Devolver's own Complaint pleads its knowledge of ESC's prospective relationships: in July 2024, ESC's counsel told Devolver that ESC was "actively pursuing opportunities to assist in development of" products, referencing the January 2023 email "which Devolver had never responded to." Compl. ¶ 79. Causation is documented in three phases: Devolver's refusal to provide authorization collapsed the PM Studios nine-game deal with EWC in June 2025; the C & D campaign made the project radioactive; and the February–March 2026 suit-and-takedown campaign destroyed the revival path PM expressly left open ("if the situation with Devolver/Sony gets resolved, I'd love to revisit this"), with a second identified prospect (Allied Gaming) interested. Interference by conduct is not privileged, and interference targeting known prospective relations states the tort.

5.      Counterclaim VIII: the implied-covenant claim is not duplicative. Counterclaim VIII reaches conduct Counterclaim I does not; and, literal-compliance-defeating behavior including the eighteen-month silence after ESC's January 2023 notice, the demand that ESC surrender its registrations as a precondition to dialogue, and the destruction of the Section 5 marketing channels through which contractual commissions flowed. Where the contract does not "expressly permit" the challenged conduct, Virgin Valley Water Dist. v. Paradise Canyon, LLC, 567 P.3d 962 (Nev. 2025), is inapposite by its own terms, and was found liable for breach of implied covenant of good faith, and counsels' actions and water district would cause irreparable harm.

6.      Counterclaim IX: the conspiracy count has a layer agent-immunity cannot reach. Attorneys acting within the scope of representation cannot conspire with their client — but SIE is not Devolver's lawyer. The pleaded conspiracy includes a principal-to-principal layer: SIE, Devolver's publicly announced 5% investor at an approximately $950 million IPO valuation, which publicly declared itself "honored to be an investor," coordinating with Devolver through the same attorney appearing in both actions one week apart in October 2024, while Devolver's Rule 7.1-1 certificate in this case denies any non-party pecuniary interest. Dkt. 40 ¶¶ 26, 33–34; ECF No. 34. As to counsel, the exception Devolver's own authority recognizes applies: Downing personally signed sworn statements — independent tortious acts on which § 512(f) imposes liability on "any person," and the SAC pleads conduct beyond professional duty. The DMCA record confirms the point: each Instagram notice lists Downing (jonathan@tyzlaw.com) as the submitting agent, and each X notice removed content from @erickscarecrow on Downing's sworn submission.

7.      Counterclaims VII, X, and XVI: addressed by amendment and candid triage. Counterclaim X is re-anchored in the Third Amended Counterclaims on NRS 598.0915(8) — disparaging "the goods, services or business of another person by false or misleading representation of fact" — a competitor-facing subsection Devolver's consumer-transaction argument does not touch, with NRS 598.0953's presumptions. Counterclaim XVI's falsity element is supplied by the same record that defeats prong one (a statement is not insulated as "legal opinion" where the speaker's own prior counsel and own conduct establish knowledge of the underlying facts), and its damages by the documented PM Studios collapse, the Allied Gaming prospect, and the temporary platform deprivations.

///

F.      Devolver's own sworn filings, not Counterclaimants' characterizations, will defeat the motion.

1.      The "pattern" materials are improper character evidence and are mischaracterized. Devolver devotes pages of both motions to a litigation-history litany and a Clark County order denying leave to amend in an unrelated loan case. Judicial notice extends to the existence of those filings, not to Devolver's gloss.

2.      The order Devolver filed refutes Devolver claims, and identifies an undisclosed financial interest. Devolver attached Judge Chen's May 14, 2026 order (ECF No. 45-6) to prove ESC's litigiousness. The filed order proves the opposite. The Court denied the dispositive sanctions Devolver's lead investor sought, held that ESC "is thus not precluded from asserting its breach of contract claim," and found ESC "a sophisticated industry player" and "a sophisticated industry actor with nearly a decade of direct dealing with SIE," whose knowledge SIE's submissions wrongly "conflate[d]" with genuinely confidential information. ECF No. 45-6 at 2, 19–20, 35. The Court may notice what the order holds; which, it may not adopt Devolver's contrary characterization. When this coalition's accusations against ESC meet judicial scrutiny, they fail; a point that answers both the "serial abuser" framing of the special motion and Devolver's assertion (ECF No. 44) that ESC required Devolver to explain licensing to it. That the sanctions movant was Devolver's lead investor is not coincidental. Defendant is informed and believes that SIE acquired a stake in Devolver at an approximately $950 million valuation and is identified as Devolver's lead investor. Also, the same Tyz attorney who certified Devolver's interested-party statement in this case appears in the Sony matter; and Devolver "voluntarily inserted itself into a federal case to which it was not a party" to support SIE's attack on ESC's credibility. Dkt. 40 ¶¶ 32–

33. Yet Devolver's Local Rule 7.1-1 certificate represents that "there are no known parties that have a direct, pecuniary interest in the outcome." ECF No. 34. A lead investor whose own sanctions motion Devolver traveled to another district to support is a party with an interest in this related dispute, and the coordination between them is a matter Counterclaimants are entitled to test in discovery. This principal-to-principal coordination, distinct from any attorney-client relationship, supplies the minimal merit Counterclaim IX requires and defeats the agent-immunity premise of Devolver's attack on that count. The certificate problem is also structural and ongoing: Devolver's July 7 filings plead that it is an exclusive licensee of the asserted rights, a status that by definition means its licensor retains a pecuniary interest in the intellectual property in suit, yet the June 11 certificate names no one, with the LR 7.1-1(c)'s continuing duty being required supplementation the moment that frame was filed. It has not been to date.

3.      Devolver's own sealing declaration contradicts the "good faith" it now asserts. On October 28, 2024, Devolver's General Counsel swore that the parties' 2024 dispute correspondence was "Devolver's confidential business information," the disclosure of which "is likely to result in competitive or commercial disadvantage," and Devolver inserted itself into the Sony litigation as a non-party to seal it. *See* Chadwick Decl. (N.D. Cal. Dkt. 413-1) ¶¶ 2–3. Wherein, the declaration's filed form, notably, bears a blank execution date and no conformed signature; and, also has sworn-paper sloppiness from the same organization whose sworn takedown notices misstated the forum of this action. Devolver has asked this Court to notice that very sealing episode, ECF No. 46 (the Sony Motion to Seal "forms the basis of Defendants' counterclaim for civil conspiracy"). Two consequences follow. First, a party that swears the underlying IP dispute is commercially sensitive and entangled with the

Sony litigation cannot simultaneously certify, under Local Rule 7.1-1, that no non-party has a pecuniary interest in this subject matter dispute. ECF No. 34. Second, and more directly, a party with sworn knowledge that this subject matter implicates contested intellectual-property rights and confidential business terms cannot have formed a good-faith belief, the anti-SLAPP prong-one predicate. ESC's use of those same works was categorically "unlicensed." The contradiction is not in Counterclaimants' characterization; though, it is between two of Devolver's own sworn filings, both of which Devolver has placed before this Court.

G.    Fees and the Statutory Penalty Are Unavailable. Under the federalized framework, the fee architecture rides on winning what is functionally a Rule 12(b)(6) or Rule 56 motion; for the reasons stated above, Devolver wins neither. Nevada law is to the same effect: NRS 41.670(1) conditions fees and the statutory award on the special motion being granted. Even on its own terms the request overreaches: which permits fees only as to dismissed claims, requiring apportionment where, as here, the special motion does not even challenge Counterclaims I(a), I(c), II–V, XI–XV, or XVII; and the proposed order seeks the NRS 41.670(1)(b) award twice, requesting the $10,000 penalty and inviting a motion for "an additional award of up to $10,000" under the same subsection, which authorizes one. ECF No. 43-1. The exposure, moreover, is not one-way; where, if the Court concludes the special motion is frivolous or vexatious, NRS 41.670(2) entitles Counterclaimants to their reasonable costs and attorney's fees incurred in opposing it.

H.    In the Alternative, Leave to Amend. Should the Court find any counterclaim deficient, leave to amend must be freely given, and Gopher Media matter, cited *supra*, confirms an anti-SLAPP filing erects no barrier to amendment. "Absent prejudice, or a strong

showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." A Motion for Leave to File Third Amended Answer and Counterclaims is filed concurrently; it cures the pleading points Devolver identifies — including the Rule 8(b) form of the answer and the framing of Counterclaim IV's scienter allegations — and moots the bulk of both motions. Devolver's blanket incantation of futility is conclusory. Futility means the amendment could not survive, and the proposed amendment, built on the record above, plainly can succeed.

///

///

///

## IV.    CONCLUSION

The special motion asks this Court to find good faith on a record its own counsel's 2019 letter and its own 2026 transfer brief contradict, to treat sworn misstatements, including representations of infringement as to works Devolver does not own, as protected opinion, and to award fees and penalties for counterclaims that are the contractual mirror of the case Devolver itself filed. The Devolver motion should be denied. In the alternative, Counterclaimants respectfully request Rule 56(d) discovery before any factual determination, and leave to amend as to any count the Court finds deficient.

Dated: July __21st__, 2026

Respectfully submitted,

LEAH MARTIN LAW

__/s/ Kevin Hejmanowski__

Leah A. Martin, Esq. (NV Bar No. 7982)
Kevin Hejmanowski, Esq. (NV Bar No. 10612)
601 South Rancho Drive, Suite C-26, Las Vegas, Nevada 89106
Frank Felder Sommers, Esq.
(admitted pro hac vice)
Paul J. Steiner, Esq. (admitted pro hac vice)
*Attorneys for Defendants/Counterclaimants*