Leah A. Martin, Esq.
Nevada Bar No. 7982
Kevin Hejmanowski, Esq.
Nevada Bar No. 10612
LEAH MARTIN LAW
601 South Rancho Drive, Suite C-26
Las Vegas, Nevada 89106
Telephone: (702) 420-2733
Facsimile: (702) 330-3235
lmartin@leahmartinlv.com
khejmanowski@leahmartinlv.com

Frank Felder Sommers, Esq.
(Pro Hac Vice)
SOMMERS LAW PC
227 Princeton Avenue
Mill Valley, California 94941
Telephone: (415) 308-4004
ffs@sommerslawpc.com

Paul J. Steiner, Esq.
(Pro Hac Vice)
580 California Street, 12th Floor
San Francisco, California 94104
paul@sfpaulaw.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DEVOLVER DIGITAL, INC.,<br>Plaintiff,<br><br>v.<br><br>ESC-TOY, LTD. and ERICK CHATEL,<br>Defendants. | **Case No. 2:26-cv-01534-APG-BNW**<br><br>**DEFENDANTS/COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) (ECF NO. 44)** |
| ESC-TOY, LTD. and ERICK CHATEL,<br>Counterclaimants,<br><br>v.<br><br>DEVOLVER DIGITAL, INC., TYZ LAW GROUP PC, JONATHAN DOWNING, and DOES 1 – 100,<br>Counterdefendants. | |

## I.  INTRODUCTION

Devolver asks this Court to dismiss all seventeen counterclaims, with prejudice, on the pleadings, while its companion special motion, filed the same day, rests on a sworn attorney declaration and seven exhibits, and while its motion to compel, filed the next day, demands full one-way merits discovery. The counterclaims Devolver brands meritless are the contractual mirror of the case Devolver itself filed. The Honorable Judge Pitman has

already held that Defendants' "entire … relation" with the Devolver IP stems from the Agreement, and that Devolver's claims "necessarily arise from and are in connection with" it. ECF No. 18 at 7–8. In Texas Court, prior to the move of venue, Devolver told a different story, that its claims were untethered to any agreement, and Devolver lost. A party may be held to the factual positions in its own briefs. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988). Taken as true with all reasonable inferences, as Rule 12(b)(6) requires, the counterclaims state viable claims. At a minimum, every asserted defect is curable, and a Motion for Leave to File a Third Amended Answer and Counterclaims is filed concurrently, mooting the bulk of this Motion. Dismissal with prejudice, the only relief Devolver seeks, would be an error on this record.

## II. FACTUAL BACKGROUND

1.      The Agreement.

On April 30, 215, the parties executed the Fulfillment and Collaboration Agreement attached to Devolver's own Complaint. Compl. Ex. A, Dkt. 1-1. Section 4 granted a worldwide license; Section 5 obligated Devolver itself to market the legal ownership of the Collaboration Products in ESC; Section 18(c) warranted that sale of the products "will not violate or infringe the rights of any third party"; Section 19 provides indemnity triggered by an" alleged breach"; and Section 24 mandates this forum. Section 9 provides, in the words Devolver itself quoted to the Honorable Judge Pittman, that "ESC's exclusive right to sell the remainder of all Collaboration Products shall survive the termination of this Agreement." ECF No. 11 at 5, 8; ECF No, 18 at 4-5.

///

2.  Performance and Devolver's own marketing.

For years Devolver treated these works as authorized: its official hotlinemiami.com promoted the "Erick Scarecrow x Dennaton" collaboration and directed customers to "Visit DEVOLVER DIGITAL for official merch," and Devolver's 2023 "Holiday Special" featured ESC's collaboration figures. ECF No. 40 ¶ 48.

3.  The 2019 termination and Devolver's acknowledgments.

During the 2019 wind-down, Devolver's co-founder wrote that Devolver "want[ed] to provide payment for potential revenue lost"; Devolver offered approximately $85,000 to purchase ESC's rights and remaining inventory against ESC's roughly $200,000 valuation; then on June 26, 2019, Devolver's then-counsel wrote to ESC that Devolver had no intention of using "any" of the copyrightable elements ESC claimed in its creative contributions and committed that Devolver would "contact ESC and negotiate an appropriate license fee" before doing so. ECF No. 12-1; Dkt. 33 ¶ 22. Devolver does not offer to buy what it already owns. ECF No. 12 at 8.

4.  Silence, then reversal.

In January 2023, ESC gave Devolver written notice identifying Devolver's own unauthorized use of five of ESC's registered works, offered a royalty structure, and invoked counsel's 2019 commitment. Devolver said nothing for eighteen months, then opened through new counsel in August and September 2024 by branding ESC's rights "patently false." ECF No. 40 ¶¶ 24–26. ESC's thirty copyright registrations date from October 2019 forward; yet, Devolver's were filed in December 2025.

///

5. The Texas detour.

On February 2, 2026, Devolver started litigation in the Western District of Texas notwithstanding Section 24. Opposing transfer, Devolver characterized its claims as independent of the Agreement while simultaneously quoting Section 9's survival text; the Honorable Judge Pitman rejected the characterization and transferred the case on May 14, 2026. ECF No. 18.

6. The takedown campaign.

Between February 25 and 27, 2026, counter-defendant Jonathan Downing submitted three DMCA notices to X on three consecutive days (LEGAL-2180824, -2187988, -2193769), removing nine posts from Chatel's @erickscarecrow account. Between February 28 and March 7, 2026, Downing submitted at least four notices to Instagram (Report Nos. 888673880626127, 1429003978674145, 1966934600867290, and a further February 28 notice), each identifying Devolver as rights owner and Downing as the submitting agent. At least two targeted posts bearing Chatel's registered original variant works (#DUSTED, #spinoff), which were registered years before Devolver's December 2025 filings, and in all events, goods to which the Agreement's Section 13 vests title in ESC. The notices misidentified the forum of the pending action (the Northern District of California rather than the Western District of Texas, No. 1:26-cv-00248). And the sworn statement that the signer was "authorized to act on behalf of the copyright owner," 17 U.S.C. § 512(c)(3)(A)(vi), issued while the licensor from whom Devolver's own briefing says its rights derive had written, weeks earlier, "Whatever agreement you have with Devolver I don't know." ECF No. 40.

7. The platforms reversed Devolver.

Following counter-notification and counsel's outreach, Instagram reviewed ESC's agreements and on March 10, 2026 restored the account, stating that its activity "does follow our Terms of Use on intellectual property" and that Meta "got this wrong." The restoration came from an independent reviewer — not from any Devolver retraction: on March 12, 2026, Devolver's counsel refused withdrawal, stating Devolver "will continue to enforce its intellectual property rights as it sees fit." ECF No. 40 ¶ 28. The wrongful notices deprived Counterclaimants of their accounts and commercial reach during the removal period and sustained a chilling effect across ESC's active projects.

8. The destroyed opportunities.

Devolver's own Complaint pleads its knowledge that ESC "has been and is actively pursuing opportunities" to develop products. Compl. ¶ 79. Devolver's refusal to provide written authorization collapsed a nine-game publishing opportunity with PM Studios in June 2025. Devolver stated "my legal team just won't let me sign off on this project because of all the risks;" and, the February–March 2026 suit-and-takedown campaign destroyed the revival path PM expressly left open, with a second identified prospect, Allied Gaming. ECF No. 40.

9. Procedural posture.

Defendants answered June 5, 2026 (ECF No. 33) and filed the operative Second Amended Answer and Counterclaims on June 23, 2026 (ECF No. 40), pleading seventeen counts and joining Tyz Law Group PC and Downing on eight. On July 7–8, 2026, Devolver filed its special motion (ECF No. 43), this Motion (ECF No. 44), the Tyz Declaration with seven exhibits (ECF No. 45), a request for judicial notice (ECF No. 46), and a motion to

compel with the Tung Declaration (ECF Nos. 47–48). Devolver noticed Mr. Chatel's deposition for July 14, 2026, and served June 26, before any discovery plan or scheduling order existed, ECF No. 48 ¶ 9, and then withdrew the notice itself. No scheduling order has been entered.

## III.  LEGAL STANDARD

A pleading survives Rule 12(b)(6) if it states "enough facts to state a claim to relief that is plausible on its face." The Court accepts the counterclaims' allegations as true and draws all reasonable inferences for Counterclaimants. Incorporation by reference "is not a tool for defendants to short-circuit the resolution of a well-pleaded claim," and by inserting the movant's own evidence, and judicial notice extends to the existence of court filings, not the truth of their contents or a movant's gloss. Devolver's reliance on the Tyz Declaration's characterizations, and on other courts' records for their truth, exceeds both doctrines. including the order Devolver itself attached; which denied the dispositive sanctions Devolver's lead investor sought and found ESC "a sophisticated industry player." ECF No. 45-6 at 2, 19–20.

## IV.  ARGUMENT

A.  The Contract Counts (I, VIII) State Claims on the Agreement's Own Text.

Counterclaim I pleads breach through the Agreement itself: the Section 4 license, Section 5 marketing obligations, Section 8 commissions, Section 9's surviving sell-off right in the words Devolver quoted, with Section 13's vesting of title in ESC, and Section 24's mandatory forum, breached by the Texas filing.

Devolver's brief engages Counterclaim I chiefly by quoting only ¶ 48's opening clause and representing the count is pled "without facts"; the full paragraph pleads the license, the warranties, Devolver's own marketing of these goods as official collaboration merchandise, and Section 13 title, a documented mischaracterization the Court can test by reading the paragraph. Counterclaim VIII is not duplicative of I, as it reaches literal-compliance-defeating conduct, with Devolver's eighteen-month silence after ESC's January 2023 notice, that being a demand that ESC surrender its registrations as a precondition to dialogue, and the destruction of the Section 5 marketing channels through which contractual commissions flowed. Where the contract does not expressly permit the challenged conduct, is inapposite by its own terms.

B.      The Declaratory Counts (II, XIV) Are Not Redundant — and Discretionary Declination Cannot Support Dismissal With Prejudice.

Counterclaim XIV is not a mirror image of the Complaint. It seeks a declaration of non-infringement under 28 U.S.C. § 2201 covering not only the Collaboration Products but ESC's standalone original works, which are subject matter the Complaint does not reach, and is grounded in Sections 9 and 13 and the Sexton Letter, which carries independent utility for the § 512(f) analysis, whether the targeted uses were "authorized by … the law" is precisely what the declaration would settle. Counterclaim II addresses the propriety of ESC's own counter-notices, and relief no disposition of Devolver's affirmative claims supplies. The controversy is concrete and continuing: seven notices across two platforms, a March 12 refusal to withdraw, and counsel's statement that Devolver "will continue to enforce" as it sees fit. And, declination of declaratory relief is discretionary; where it cannot

support what Devolver seeks, a dismissal *with prejudice* of claims the Court has discretion to hear.

C.     Counterclaim IV States a § 512(f) Claim Under the Governing Subjective Standard.

The counterclaims plead it with documents, not conclusions, that Devolver's own counsel acknowledged ESC's copyrightable elements and a license-fee obligation in 2019 (ECF No. 12-1). Devolver's own transfer briefing identified Section 9 as the surviving-rights provision (ECF Nos. 11 at 5, 8; 18 at 4–5); Devolver itself marketed the same works as official collaboration merchandise; with Section 13 vests title to the goods in ESC, a party cannot in good faith swear that the owner's sale of its own goods infringes; the § 512(c)(3)(A)(vi) authorization statement issued against the licensor's written disclaimer of knowledge; the notices misstate the forum of the pending action, with an objective falsehood independent of any contract dispute. Moreover, after counsel presented the rights and demanded withdrawal, Devolver refused and the campaign's targets were restored by the platform itself, which concluded the activity "does follow" its IP terms. A sender who fails to consider whether the use is "authorized by … the law," including by a surviving license, proceeds in willful blindness, which satisfies knowledge. (Imposing § 512(f) liability where "no reasonable copyright holder" could have believed the material infringing — an inference of actual knowledge).

///

///

///

D.    The Litigation Privilege, Noerr-Pennington, and "Preemption" Do Not Bar the State Counts.

Nevada's absolute privilege is a defamation doctrine the Nevada Supreme Court has pointedly declined to extend across all torts, and it has never been applied to erase bargained-for contract rights, or communications to non-participants are privileged only if the recipient is "significantly interested" in the proceeding. A "case-specific, fact-intensive inquiry" distinguishing "bona fide litigation activities" from "a public relations campaign." Whether the trust-and-safety intake queues of X and Instagram were "significantly interested" in a Nevada lawsuit, or were the instruments of a deplatforming campaign of seven notices submitted by Downing personally, it cannot be resolved on the pleadings, and the privilege has no application to a claim for breach of the parties' own forum bargain; which, sounds in contract, not speech. Nor does § 512(f) "preempt" the state counts, that opinion that no court of appeals, so holds, the statute contains no preemption clause; and § 301 preemption fails on the extra-element test, because a contractual duty, malice, and an agreement among distinct actors are qualitatively different from the rights of § 106. (Takedown-based counterclaims proceed alongside § 512(f); subjective good faith is "a factual issue … not appropriate for resolution on a motion to dismiss"). These arguments are developed further in Defendants' Opposition to the Special Motion, filed concurrently, at §§ III.E.1–E.2, and are incorporated here.

E.       The Remaining Attacked Counts (III, V, VI, IX, X, XVI) Are Adequately Pled.

Counterclaim III (infringement). Each act of infringement accrues separately, and claims reach all conduct within three years of filing. ESC's thirty registrations date from October 2019 forward, years before Devolver's December 2025 filings.

Counterclaim V (warranty/indemnity). Section 19 is triggered by an "alleged breach" — its own grammar — and the licensor's January 2025 written disclaimer of knowledge supplies the specific fact Devolver calls conclusory: if Devolver lacked the clearances Section 18 warranted, its own lawsuit triggers its own indemnity.

Counterclaim VI (interference). Knowledge is pled from Devolver's own Complaint (¶ 79); where causation is documented in three phases, the authorization refusal that collapsed the PM Studios deal in June 2025, the C&D campaign, and the February–March 2026 suit-and-takedown campaign that destroyed the documented revival path and the Allied Gaming prospect. Interference targeting known prospective relations states the tort.

Counterclaim IX (conspiracy). Attorneys acting within the scope of representation cannot conspire with their client, but Sony Interactive Entertainment is not Devolver's lawyer. The pleaded conspiracy includes a principal-to-principal layer. Devolver's publicly announced lead investor, the same attorney appearing in both actions one week apart in October 2024, had Devolver voluntary insert into the Sony Interactive Entertainment case to seal the parties' dispute correspondence as "confidential business information," and a Rule 7.1-1 certificate here denying any non-party pecuniary interest. ECF Nos. 34, 46; ECF No. 40 ¶¶ 32–34. As to counsel, the exception Devolver's own authority recognizes applies.

Downing personally signed the sworn notices, and § 512(f) imposes liability on "any person.

Counterclaim X (DTPA). The claim is anchored on NRS 598.0915(8), disparaging "the goods, services or business of another person by false or misleading representation of fact," is a competitor-facing subsection Devolver's consumer-transaction argument does not address.

Counterclaim XVI (trade libel). Falsity is supplied by the record above, including the platform's own conclusion that the accused activity complied with its IP terms, and special damages by the PM Studios collapse, the Allied Gaming prospect, and the deprivation period the wrongful notices caused.

F.      The Balance of the Counts Survive — and Any Defect Is Curable, Foreclosing Dismissal With Prejudice.

Counterclaims VII, XI–XIII, XV, and XVII plead their elements and are entitled to all reasonable inferences; Devolver's arguments against them are element quarrels that assume Devolver's own disputed reading of the Agreement, the very reading a federal court has already declined to accept. Should the Court find any count deficient, leave to amend must be freely given: "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend," and prejudice is the opposing party's burden. The concurrently filed Motion for Leave and Proposed Third Amended Answer and Counterclaims cure the pleading points Devolver identifies, including the scienter framing of Counterclaim IV and the Rule 8(b) form of the Answer, and moot the bulk of this instant Motion. Devolver's blanket futility

incantation is conclusory; futility means the amendment could not survive, and on this record it plainly can.

## V.  CONCLUSION

The Motion should be denied. In the alternative, Counterclaimants respectfully request leave to amend as to any count the Court finds deficient.

Dated: July 23, 2026

Respectfully submitted,

**LEAH MARTIN LAW**
By: /s/ *Kevin Hejmanowski*_____
Leah A. Martin (NV Bar No. 7982)
Kevin Hejmanowski (NV Bar No. 10612)
Frank Sommers (Pro Hac Vice pending)
Paul J. Steiner (Pro Hac Vice)
Attorneys for Defendants/Counterclaimants
ESC-Toy, Ltd. and Erick Chatel

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of July, 2026, I electronically filed the foregoing **ERRATA OF THE DECLARATION OF PAUL J. STEINER PURSUANT TO FED. R. CIV. P. 56(d) IN SUPPORT OF DEFENDANTS/COUNTERCLAIMANTS OPPOSITION TO PLAINTIFF'S SPECIAL MOTION TO DISMISS (ECF NO. 43)** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


___*/s/ Elizabeth Traynor*_____

An Employee of Leah Martin Law